GEORGE THORN *et al.*

*v.*

THE WEST CHICAGO PARK COMMISSIONERS.

*Filed at Ottawa October 31, 1889.*

1. SPECIAL ASSESSMENTS—*objections to confirmation—within what time to be filed.*   Notwithstanding the act of 1871 provides that all objections to the confirmation of special assessments shall be filed in writing in the court at least three days before the time fixed for the application for judgment, the court, in the exercise of the large discretion given by the act, may, for any sufficient cause appearing, permit objections to be filed at any time before the hearing.

2. Same—*confirmation of park assessments—by what court.* An application by park commissioners for judgment of confirmation of special assessments made by them for the purpose of making a boulevard, is properly made to the circuit court, under the act of 1871.

3. Same—*park assessments—appropriating streets for boulevard purposes—conditions thereto, etc.* Section 1 of the act of 1879, as amended in June, 1885, gives the boards of park commissioners power to take and select connecting streets only upon three express conditions or limitations: First, the streets so taken shall lie within the district or territory the property of which shall be taxable for the maintenance of such park ; second, the consent of the corporate authorities having the control of any such street must be obtained ; and third, the consent, in writing, of the owners of a majority of the frontage of the lots and lands abutting on such street or streets shall first be obtained.

4. The fact that park commissioners seeking to select and take a public street have first obtained the consent, in writing, of a majority of the owners of lots abutting on such street, is necessary to their jurisdiction to assume control of such street. The burden of proof rests upon such board to establish, *prima facie,* at least, the jurisdictional facts, before asking a judgment confirming special assessments levied by them.

5. The West Chicago Park Commissioners, claiming to have obtained the consent, in writing, of the owners of a majority of the lots on a street, as well as the consent of the city authorities, applied to the circuit court for a judgment confirming a special assessment on lots and lands to pay for the proposed improvement, and on the hearing gave in evidence a paper purporting to be signed by owners of lots lying on such street, or by their agents. This paper was the one acted upon by the board, and came from their custody. Omitting the names of owners signed by agents, consent of the requisite number of lot owners is not shown. The court admitted such writing over objections, holding, that it showed a *prima facie* right in the board : *Held,* that it was error to admit the paper without proof of its execution by the required number, and in case of an execution by an agent, the agent's authority should have been shown.

6. Where park commissioners seek confirmation of their assessment under a power conferred by statute, it is incumbent on them to show compliance with the law under which they have derived their power to impose the special assessment or burden.

Appeal from the Circuit Court of Cook County; the Hon. Lorin C. Collins, Judge, presiding.

Messrs. MILLER, LEMAN & CHASE, for the appellants:

The action of the park board should correspond with the proposition to which the consent referred. *Dwight* v. *Springfield,* 4 Gray, 107.

There was no power in the city to alienate control of these streets to the park commissioners. *Kreigh* v. *Chicago,* 86 Ill. 407; *People* v. *Walsh,* 96 id. 232.

The power to select and take streets is given to the park commissioners under the conditions in the statute prescribed. One of those conditions is, that "the consent, in writing, of the owners of a majority of the frontage of the lots and lands abutting on such street or streets, as far as taken, shall be first obtained." This consent of the property owners is clearly jurisdictional, and lies at the foundation of the power of the park board to take and select the streets. Without such consent the action of the park board in taking said streets, and its subsequent proceedings, are null and void. *State* v. *Elizabeth,* 30 N. J. L. 176; *Henderson* v. *Baltimore,* 8 Md. 352; *Holland* v. *Baltimore,* 11 id. 186; *Bouldin* v. *Baltimore,* 15 id. 18; *Kyle* v. *Malin,* 8 Ind. 34; *In re Sharp,* 56 N. Y. 257; *Turrill* v. *Grattan,* 52 Col. 97; *Pittsburg* v. *Walter,* 69 Pa. St. 365; *St. Louis* v. *Gleason,* 89 Mo. 67; *Hays* v. *City of Brooklyn,* 71 N. Y. 459; *Voorhees* v. *Bank,* 10 Pet. 449; *Carson* v. *Martin,* 2 Dutch. 594.

The circuit court should have held this alleged consent of property owners void, on account of an alteration therein, and excluded it, and held the proceedings of the park commissioners *coram non judice,* and void for want of the required consent. *Graves* v. *Otis,* 2 Hill, 466.

The fact of consent being jurisdictional, must be shown by competent evidence. The park board offered in evidence the paper, to which we made proper objection, and insisted on the proper proof of its execution, and of the facts showing that it was the consent of the owners of a majority of the frontage required. No such proof was introduced, and the trial court

held that it was unnecessary, and that all that was required on the part of the park board was to introduce the paper, and the offer of it in evidence made a *prima facie* case. This was manifest error. *Henderson* v. *Baltimore*, 8 Md. 352; *Pittsburg* v. *Walter*, 69 Pa. St. 365; *State* v. *Elizabeth*, 30 N. J. L. 176; *Boyle* v. *Brooklyn*, 71 N. Y. 1.

The paper should have been excluded, and the objections to the assessment sustained for want of such consent.

Mr. JOHN M. HAMILTON, and Mr. CHARLES C. GILBERT, for the appellees:

The special assessment in this case was made in pursuance of the authority conferred on park commissioners, and in the manner provided for in section 3 of the act of 1871, (2 Starr & Curtis' Stat. p. 1695,) which act has been decided by this court to be constitutional and in force, in *People* v. *Brislin*, 80 Ill. 423, and *Dunham* v. *People*, 96 id. 331.

Section 3 of the act of 1871 provides a complete and simple method of making special assessments for the improvement of the boulevards, and the authority conferred on the park commissioners by that act, and the method of making assessments therein provided for, has been followed in practice by all the park boards in Chicago, for years, and assessments made by eminent lawyers, under that law, for boulevards, have already passed through and been approved by this court. *Park Comrs.* v. *Railroad Co.* 107 Ill. 106; *People ex rel.* v. *Walsh*, 96 id. 232.

It thus becomes apparent that this assessment was properly and legally made, under section 3 of the act of 1871, above cited.

The language of the statute is peremptory and mandatory. By no sort of construction can it be construed so as to leave any discretion with the court as to the time of filing objections. The language is as follows (Starr & Curtis, p. 1698): "Any person interested in any lot, block or parcel of land

assessed, may appear therein, in person or by attorney, and object to said assessment: *Provided,* all objections shall be in writing, and be filed in said court at least three days before the time fixed for said application."

These objections were not filed until the day and hour fixed for the application. The circuit court had no power or discretion to permit them to be filed. That was a matter regulated by the express language of the statute.

The constitution does not confer exclusive jurisdiction on county courts in special assessment matters. Such jurisdiction may be conferred on circuit courts. *Hundley* v. *Comrs. of Lincoln Park,* 67 Ill. 559.

In all cases, if a construction can reasonably be given by which both acts may stand, it will be adopted. *Hunt* v. *Railway Co.* 121 Ill. 644.

The act of 1871, under which this assessment is made, is declared constitutional and valid. *People* v. *Brislin,* 80 Ill. 423.

The board of park commissioners for the town of West Chicago was created by an act of the General Assembly of Illinois, entitled "An act to amend the charter of the city of Chicago, to create a board of park commissioners, and to authorize a tax in the town of West Chicago, and for other purposes," approved February 27, 1869. 1 Private Laws of 1869, 342, 353.

This act was confirmed and supplemented by an amendatory act, entitled "An act supplemental to 'An act to amend the charter of the city of Chicago, to create a board of park commissioners, and to authorize a tax in the town of West Chicago, and for other purposes,' approved February 27, 1869," approved April 19, 1869. 1 Private Laws of 1869, 354, 358.

By the fourth section of the first of the above cited acts, provision is made for the organization of the board, and confers upon said board full and exclusive power to govern, manage and direct all parks, boulevards and ways authorized by the act, and by them purchased, made, laid out or established.

By section 13, said commissioners are authorized, in the manner therein provided, to make and levy assessments for the purpose of raising money with which to pay for property acquired for park and boulevard purposes. Said section provides, among other things, that the assessment roll of levies made to pay for such property so acquired shall be filed for final confirmation in the circuit court of Cook county.

These provisions, however, would seem to apply solely to the expenses incurred by the board in acquiring lands, and not to expenses incurred in improving the same. The improvement and maintenance of the lands for park and boulevard purposes was intended to be paid from the tax provided for in section 16 of the act of February 27, 1869, and the proceeds of the bonds authorized to be issued by section 15 of the same act.

Mr. Chief Justice Shope delivered the opinion of the Court:

This was a proceeding in the circuit court of Cook county, by petition of the West Chicago Park Commissioners, for confirmation of a special assessment, made by said commissioners upon the lots of appellants and others, for the making and construction of a continuous boulevard upon portions of Twelfth street and Ogden avenue, in the city of Chicago, leading from the city to Douglas Park, one of the parks under the control of appellees. The streets being within the park district, it is claimed the commissioners acquired control of the portions thereof included in the proposed boulevard, under and in accordance with the act of the legislature of April 9, 1879, (2 Starr & Curtis, 1715,) as amended by the acts of June 27, 1885, and June 16, 1887, (3 Starr & Curtis, 412, 413,) and therefore they had lawful authority to make such assessment.

Before considering whether the commissioners had taken such portions of said streets in conformity with the statutes, it will be proper to dispose of some of the minor contentions of the parties, respectively:

*First*—It is contended by appellee, that appellants were in the court below, and are here, in no condition to object to the proceedings for confirmation of said assessment. The 3d section of the act of 1871, (Starr & Curtis, 1697, 1698,) under which act the assessment was made and the confirmation proceedings prosecuted, after providing for the return of the special assessment into the circuit court, and for notice to the lot owners, provides that "any person interested in any lot, block or parcel of land assessed, may appear therein, in person or by attorney, and object to said assessment: *Provided,* all objections shall be in writing, and be filed in said court at least three days before the time fixed for said application" for confirmation. In this case, the objections were not filed three days before the time fixed for the application, but on the day so fixed, upon leave of the court, were filed instanter. A motion to strike the objections from the files was made, and overruled by the court, and appellees excepted. It is now urged that the circuit court erred in permitting the objections to be filed, over the objection of appellees, and in not sustaining the motion to strike from the files, and in considering the same, for the reason that they were not filed within the time fixed by the statute. It will be observed, by reading the act in question, that a large discretion is vested in the court, in proceedings thereunder, and while appellants could not, as a matter of right, file their objections to the confirmation of the assessment except in compliance with the statute, it was, we think, clearly competent for the court, in the exercise of a sound discretion, for any sufficient cause appearing, to permit objections to be filed at any time before the hearing, or on the hearing, if apparently necessary to a proper presentation of the cause. But if this were otherwise, the court did permit the objections to be filed, and if appellees desired to insist upon the alleged error in this regard, they should have assigned cross-errors, and not having done so, are in no condition to question the rulings of the circuit court.

*Second*—Appellants insist that the circuit court was without jurisdiction, and therefore the judgment should be reversed. The point is made that the 3d section of the act of 1873 (Starr & Curtis, 1709,) provides for the return of the assessment to the county court, and requires that the proceeding shall be in compliance with article 9 of the act in relation to cities and villages, and that the act of July 16, 1871, (Starr & Curtis, 1695,) gave no authority for or validity to these proceedings. It is substantially conceded, as it must be, that the act of 1871 furnishes a complete method for the assessment and confirmation, in cases falling within its purview. Nor is there necessarily any inconsistency between the 3d section of the act of 1873 and the 3d section of the act of 1871. The one relates to assessments made to improve boulevards and pleasure grounds under control of park commissioners, and the construction of sewers, and requires that plans and specifications therefor shall be first made; the other relates to land taken or purchased by the commissioners for park purposes, and requires an estimate only shall be made of the cost of such land. The 3d section of the act of 1871 provides for a report to and confirmation of the assessment by the circuit court, while the act of 1873 requires the confirmation to be in the county court, as before stated.

The act of 1879, as amended, provides that assessments and taxes thereby authorized shall be enforced and collected as other assessments and taxes are enforced for or on account of such boards and authorities. By the 2d section of the latter act, as amended in 1887, the sum of money raised by the tax or assessment is limited not to exceed the estimated first cost of the improvement ordered, and it is expressly provided that it shall not be used for any subsequent care, maintenance or repair thereof, thereby requiring an estimate of the cost of the proposed improvement, and confining the amount to be raised to the estimated cost of converting the street into a boulevard in the first instance, leaving, as it would seem,

subsequent improvements to be made under the act of 1873. It is apparent that resort must here be had to the circuit court, under the one act, and to the county court, under the other, for confirmation of the assessment.    No reason is perceived why the acts in question may not subsist together, each governing in appropriate cases.    We have repeatedly held the act of 1871 to be in force, and sustained assessments made thereunder, although the question here arising, perhaps was not involved. *People* v. *Brislin,* 80 Ill. 423 ; *Dunham* v. *People,* 96 id. 331.

Under the act of 1879, authorizing the taking of streets by the park commissioners, it does not seem to be contemplated that plans and specifications of the work shall be adopted, which would appear to be a prerequisite under the act of 1873. Like the provision in respect of assessments to pay for land purchased or taken, there is to be an estimate of the cost of the improvement ordered.    We can not perceive why the proceedings in cases of this sort do not most appropriately fall within the act of 1871, if, indeed, it can be prosecuted at all under the act of 1873.    We are of opinion that the application was properly made to the circuit court, and if the county court had jurisdiction, it, at most, was concurrent only.

The remaining question which we shall notice relates to the jurisdiction of the park commissioners over the portions of Twelfth street and Ogden avenue sought to be taken as a boulevard connecting Douglas Park with the city of Chicago.

The 1st section of the act of 1879, as amended by the act of the 27th of June, 1885, is as follows :

"Sec. 1.    That every board of park commissioners shall have power to connect any public park, boulevard or driveway under its control, with any part of any incorporated city, town or village, by selecting and taking any connecting street or streets, or part thereof, leading to such park ; and shall also have power to accept and add to any such park, any street or part thereof which adjoins and runs parallel with any boundary line of the same :    *Provided,* that the streets so selected and

taken, so far as taken, shall lie within the district or territory the property of which shall be taxable for the maintenance of such parks: *And provided further*, that the consent of the corporate authorities having control of any such street or streets, so far as selected and taken, and also the consent, in writing, of the owners of a majority of the frontage of the lots and lands abutting on such street or streets, so far as taken, shall be first obtained."

The restrictions upon the right of the board of park commissioners to select and take the street or streets connecting the park with the city, although put in the form of a proviso, are clearly a limitation on the power of the board, and clearly negative all authority to take the street or streets unless the conditions prescribed are met and complied with. These conditions are: First, the streets so selected and taken, so far as taken, shall lie within the district or territory the property of which shall be taxable for the maintenance of such parks; second, the consent of the corporate authorities having control of any such street or streets, so far as selected and taken, shall be first obtained; third, the consent, in writing, of the owners of a majority of the frontage of the lots and lands abutting on such street or streets shall be first obtained. And after these requirements have been complied with, and not until then, and the park commissioners have selected the streets, the "selecting and taking," within the meaning of the law, is complete. *Comrs. of Kensington* v. *Keith*, 2 Barr, 218; *Voorhees* v. *Bank of the United States*, 10 Pet. 193; *Holland* v. *Baltimore*, 11 Md. 186.

This is conceded by counsel for appellees to be the correct construction of the statute, but it is claimed that full compliance has been shown. No question arises in respect of the two conditions first mentioned, but it is insisted that the consent of the owners of a majority of the lots and lands abutting was not shown to have been obtained. The objections filed by appellants fully cover all the questions discussed.

The controversy here relates to the third condition,—the consent of the owners of a majority of the abutting frontage. Such consent of the owners of more than one-half of the frontage upon the portions of the streets proposed to be converted into a boulevard connecting the park with the city, lay at the foundation of the right of the park commissioners to assume control of the streets. The existence of the fact was necessary to the jurisdiction of the park commissioners, and the burthen was upon them to establish, *prima facie* at least, the jurisdictional facts authorizing them to take these streets for the purpose of constructing a boulevard appurtenant to the park, and connecting the same with the city.

On the hearing of the application for confirmation of the assessment roll, returned by the commissioners, to show such consent in writing, the commissioners produced a paper purporting to be a petition to the board by, and the consent of, abutting property owners for the taking of the portions of said streets as a boulevard connecting the city and park. It was shown that such paper came from the files kept by the board of commissioners, and was the written consent acted upon by the board in taking said streets, or parts of streets, for the purpose contemplated. They then called a witness, who testified that he drew up the paper produced, circulated it, and procured most, but not all, the signatures thereto; that he was unable to distinguish those he had not procured, etc. It appearing also, on the face of said paper, that some of the names thereto, purporting to be the names of the owners of property abutting on said parts of streets claimed to have been taken by the commissioners, had been signed by an agent, or by some other person, for or on behalf of the owner, the commissioners offered evidence intended, as it would seem, to explain the same, and show, as we presume, the authority of such agent or other person to sign the same. Upon objection to the competency of this offered evidence, the court held that it was unnecessary, in the first instance,—that the production

and putting in evidence, the petition and consent paper made a *prima facie* case for the commissioners, and cast the burthen upon the objectors to show that it was not the written consent of property owners, as it purported to be. Said paper was then, over the objection of appellants, read in evidence. It had been shown, that the frontage on Twelfth street, from Ashland avenue to Ogden avenue, and on Ogden avenue, from Twelfth street to Douglas Park, being the entire frontage sought to be charged with the expense of the proposed improvement, was 14,775 feet, a majority of which is 7388 feet; and that if the boulevard was continued westerly, through the park, to the east line of Albany avenue, the distance would be increased 2150 feet, making an additional frontage by the park of 4300 feet. By simple computation, the paper read in evidence showed, that of the frontage on Twelfth street and Ogden avenue, there had been consent signed to 7536 feet, or $148\frac{1}{2}$ feet more than one-half thereof.

We can not concur in the holding of the trial court. As we have seen, the burthen was upon the park commissioners to show, affirmatively, the jurisdictional fact of consent by the owners of the required amount of frontage. The evidence in respect thereof was, we think, wholly insufficient. Waiving the matter of proving ownership by the persons purporting to sign the paper admitted in evidence, it is not shown that a sufficient number of such persons signed the consent to constitute consent by the owners of a majority of the abutting property. The only person introduced who testified generally to the execution of the writing, testifies that he procured the signatures of most of the signers, but not all, and he does not testify, except in a few instances, either as to those he did or did not procure. There are many signatures to the writing purporting to be the consent of owners of abutting property, either of whom purport to sign for a sufficient number of feet frontage to reduce the amount to less than the required number of feet. We can not tell from the evidence contained in

this record whether these persons executed this instrument or not. The writing here offered is not signed by the objectors, and we are aware of no rule by which it was admissible in evidence against them, without proof of its execution.

But if it could be conceded that the evidence was sufficient to show the signing by the parties purporting to execute the writing, the names of persons purporting to sign as owners, representing over 1300 feet of this frontage, were apparently placed there by some other person. There was no competent evidence tending to show authority of the persons executing, or purporting to execute, the consent for or on behalf of such owners. The execution or signing of the name of the owner by one without authority would not be binding upon the owner, and would not constitute consent, within the meaning of the statute. The burthen was upon the commissioners to show consent of the required number of owners, and to do this, in this case, it was necessary to show that authority to execute the consent was given by the owner on whose behalf it purported to be executed. *Henderson* v. *Mayor of Baltimore,* 8 Md. 352.

Nor is the consent at all aided by the fact that the park commissioners acted upon the paper introduced in evidence, or by the consent of the city of Chicago that the parts of the streets named might be taken by the commissioners for a boulevard. The action of the city is wholly independent of that of the property owners. And while the park commissioners must, in the first instance, pass upon the fact of consent by the owners of abutting property, and determine for themselves whether those owning a majority of such property have consented to their appropriation of the street for the purposes contemplated by the act, such determination can have no effect when their jurisdiction is challenged in endeavoring to carry out the powers conferred by the statute. The power conferred upon the park board affects and impairs the right of the citizen, and may (and in the case of the minority of holders of abutting property does) incumber his property without his

consent, and may arbitrarily impose onerous burdens for which there is no relief or redress. The legislature has interposed the safeguard of requiring the consent of the owners of more than one-half of the property to be affected, upon the presumption, no doubt, that what will be of benefit to the greater portion will not unduly prejudice the lesser part; and when the commissioners sought confirmation of their assessment upon appellants' property, under the power conferred by the statute, it was incumbent upon them to show compliance with the law, by which alone they obtained jurisdiction to impose the burden. This they have not done. *Rex* v. *Mayor of Liverpool*, 4 Burr. 244; *Smith* v. *City of Madison*, 7 Ind. 86; *Clark* v. *Washington*, 12 Wheat. 40, and *supra*.

We refrain from discussion of the point that there was a material alteration of the writing after it had been signed, without the knowledge or consent of the signers, whereby the boulevard was extended 2150 feet through the park, and the subsequent assent of the park commissioners for the frontage of the park on each side of the street, farther than to remark, that such consent in nowise affects the questions heretofore considered. The estimate of the cost of the improvement proposed was confined by the commissioners, as it appears, to the improvement of Twelfth street from Ashland avenue to Ogden avenue, and of Ogden avenue from Twelfth street to Douglas Park, as consented to, as such consent paper was originally drawn, and was fixed at the sum of $249,718.78, and which sum was assessed upon the abutting property on the parts of said streets, as designated in the assessment roll returned to the circuit court. Upon another hearing the alteration may be so explained as that it shall not affect the validity of the consent.

It follows, that the judgment confirming the assessments against the lands and lots of appellants was erroneously entered, and must be reversed, which is accordingly done, and the cause remanded for further proceedings.

*Judgment reversed.*