## The Chicago & Northwestern Railway Co.

v.

## The West Chicago Park Commissioners.

*Filed at Ottawa, June 19, 1894.*

1. PARK COMMISSIONERS—*control of streets leading to parks.* The West Chicago Park Commissioners have control of the streets leading to certain public parks; and when the commissioners have taken control of such streets, a railway company can not lay an additional track in one of such streets without a permit from the park commissioners.

2. SAME—*city estopped to deny legality of control of streets by them.* After the exercise of the control of the streets for many years by the park commissioners, with the consent of the city of Chicago, though never so informally given, and the expenditure by them of large sums of money therein in the way of improvements, without question of their right so to do, the city will not be heard to question the rightfulness of their control of such streets.

3. The individual citizen, who, together with all others affected thereby, has for many years acquiesced in the exercise of municipal authority, and who has, during such time, contributed by way of payment of taxes to the support thereof, and paid special assessments for local improvements which he has seen undertaken and perfected by the expenditure of vast sums of money, and to all of which he made no objection, can not after this be heard to insist upon a want of power in the municipality, upon the ground that in the original acquisition of control, some provision of the law was not technically observed.

4. PARKS—*the Park act to be liberally construed.* The Park act, creating the West Park Commissioners, is to be liberally construed in all courts and places in favor of the jurisdiction and powers thereby conferred, and of the proceedings under the same; and such construction is no less applicable to proceedings for the acquisition of streets leading to the park.

5. MUNICIPAL CORPORATIONS—*presumptions from acquiescence in exercise of corporate powers.* Municipal corporations are created for the public good, and are demanded by the wants of the community; and the law creating them, after long continued use of corporate powers, and the public acquiescence, will indulge in presumptions in favor of their legal existence. The law will incline to sustain rather than defeat them.

6. Same—*jurisdiction—questioning collaterally by private party.* After long continued acquiescence in the exercise of jurisdiction by a municipality, the validity of the proceedings by which the jurisdiction was originally acquired can not be called collaterally in question at the suit of a private party.

7. Error—*committed at the instance of the party complaining.* A party will not be permitted, in a court of review, to insist upon error committed at his own instance, or contrary to his express stipulation upon which the lower court was induced to act.

8. Railway Company—*rights where street is laid out over its land.* Where land of a railway company is condemned for a public street, and the just compensation for the land taken and damaged is paid, and the control of the streets is committed to the local municipal authorities, the rights of the company in the street, or under its charter, will be subject to the paramount right of the general public to the use of the street, and the improvement of such street will be in the discretion of the local municipal authorities as the public interests may require.

Appeal from the Circuit Court of Cook County; the Hon. M. F. Tuley, Judge, presiding.

Mr. W. C. Goudy, for the appellant:

The railway company had the legal right to lay their third track, which was enjoined.

The owners of a majority of the frontage on Washington street, between Halsted street and Central Park, did not consent in writing to the taking of that part of the street for a boulevard. *Thorn* v. *West Chicago Park Commissioners,* 130 Ill. 599.

The city did not consent to the taking of the street by the park commissioners.

The railway company is not estopped from proving the fact that there was a want of consent by the city, or by the owners of abutting property. Bigelow on Estoppel, 345; *People* v. *Brown,* 67 Ill. 435; *Flower* v. *Elwood,* 66 id. 438; *Ball* v. *Hooten,* 85 id. 159; *Davidson* v. *Young,* 38 id. 145; *Dorlarque* v. *Cress,* 71 id. 380; *Chandler* v. *White,* 84 id. 435; *Smith* v. *Newton,* 38 id. 230; *Bradford* v. *Chicago,* 25 id. 411; *Jack* v. *Weinnett,* 115 id. 105.

Mr. Francis A. Riddle, Mr. Mason B. Loomis, Mr. W. W. Evans and Mr. Gardner G. Willard, for the appellees:

The defendant corporation can not now question the regularity of any of the proceedings under which the West Chicago Commissioners acquired and have since exercised control over Washington boulevard. *R. & M. R. R. Co.* v. *F. L. & T. Co.*, 49 Ill. 347; *C., R. I. & T. R. R. Co.* v. *Joliet*, 79 id. 25; *People* v. *Farnham*, 35 id. 562; *Jameson* v. *People*, 16 id. 257; *Rector* v. *Board of Improvement*, 50 Ark. 116; *Kellogg* v. *Ely*, 15 Ohio St. 64; *Taber* v. *Ferguson*, 109 Ind. 231; *Powers* v. *Haven*, 120 id. 190; *Hammerslaugh* v. *Kansas City*, 46 Kan. 37.

Mr. Justice Shope delivered the opinion of the Court:

Counsel for appellant states the question involved in this case to be as follows:

"The Chicago & Northwestern Railway Company undertook to lay a railroad track across a public street in the city of Chicago, formerly called Washington street, but now called Washington boulevard. The West Chicago Park Commissioners claimed that the track could not be laid without their permission, resting the claim upon the allegation that the control of the street had been transferred from the city to them, and denying the right of the railway company to lay the track without a permit. This is the subject-matter of the controversy in this case, and the right of the railway company to so occupy the street depends upon the question as to whether the control of the street had been legally turned over by the city to the park commissioners."

With this statement of the controversy, a re-examination of the question, as to the extent of the powers of the park commissioners, over a street brought within their municipal control, under the Act of 1879, will not be necessary. In the late case of *McCormick* v. *South Park Comrs.*, 150 Ill. 516, that

question was discussed and determined, and the holding was, that in respect of streets leading to the park, acquired under the Act of 1879, the park commissioners had authority and control co-extensive with that vested in them of and concerning the parks, driveways and boulevards under their control, and that, therefore, they had ample power to prevent the erection of a structure without their permission, which, when erected, would extend over and upon the street. And, in view of the construction given to the acts there under consideration, it can not be said that the West Chicago Park Commissioners have any less power and dominion in respect of streets acquired by them under the later act. (1 Priv. L. 1869, p. 342, sec. 4.) Indeed, there would seem to be no controversy in this case as to the authority of the park commissioners in the premises, if they be found to be in lawful control of the street.

In the agreed statement of facts, upon which the cause was submitted in the trial court, it is stipulated, among other things, that appellant was the owner in fee simple of the land now occupied by the portion of Washington street in question, and on either side thereof, long anterior to the opening of said street across the same, and had two tracks thereon; that Washington street was opened across said land in 1874, over the tracks of appellant thereon laid, by condemnation proceedings instituted by the city of Chicago, etc.; and that "said railway company was authorized by the terms of its charter, granted by the legislature of the State, to acquire said property and to lay its railroad tracks thereon for the conduct of its business as a common carrier.

And by the same authority, it has the legal right to lay additional tracks parallel with those already constructed, unless the control of West Washington street has been legally transferred from the city of Chicago to the West Chicago Park Commissioners, and if such legal control has been acquired by said commissioners, then said railway

company has only authority to lay a third track with the consent and permission of said commissioners, which has not been granted.

It will, therefore, be seen, that it will only be necessary to determine, so far at least as appellant is concerned, whether the park commissioners were in legal control.

The objections of appellant question the validity of the proceedings under which the park commissioners came into control of the street, and the objections are: (1) That consent in writing of the owners of a majority of the frontage upon the street was not first obtained—that is, that the petition purporting to be signed by such owners, was in many instances not so signed, but by agents, guardians, officers of corporations, etc., without showing authority to make such signatures, or that the persons whose names were attached were in fact the owners; and (2) that the city of Chicago did not consent to the taking of the street by the park commissioners—that is to say, that by the ordinance of the city entitled, "An ordinance consenting that the Board of West Park Commissioners may take, regulate, control and improve a certain part of West Washington street, from the west line of Halsted street to Central Park," adopted September 29, 1879, it was provided:

"2. Unless the said Board of Park Commissioners shall within thirty days from the approval hereof, select and take the said parts of streets, for the purposes aforesaid, this ordinance shall cease to be of any force or effect, and the consent given, by section one aforesaid, shall be deemed to be withdrawn."

And it is insisted that the park commissioners did not *select and take* the street within the thirty days prescribed in said ordinance, and that this could not be done, within the meaning of the act, by mere physical taking, but that consent in writing of the owners must have been obtained

within that period, and this, it is claimed, was not done in this case.

It appears that, previous to the passage of said ordinance, numerous petitions had been presented, consenting to the taking of the portion of Washington street in question, the last two of which consented to the taking of the street from the river to the park. That on October 17, 1879, the Board of Park Commissioners adopted a resolution, that in pursuance of the Act of 1879, "consent on the part of the corporate authorities of the city of Chicago having been duly granted, this board will and does hereby select and take that part of West Washington street extending from the west line of Halsted street to Central Park for the purposes named in said act, and will regulate, control, improve and maintain the same in manner and form as contemplated by said act.

"This resolution is adopted in accordance with the consent of the owners of a majority of the lots and lands abutting on said street, so far as taken or proposed to be taken by the board, as given and to be given."

And that, on October 18, 1879, a duly authenticated copy of said resolutions was filed in the office of the city clerk of Chicago.

It also appears, that on February 16, 1880, a petition was again presented to the said Board of Park Commissioners, purporting to be signed by owners and representatives of owners, consenting to the taking of said part of Washington street. The signatures in this petition, objected to by appellant, are pointed out in its brief. On the same day, resolutions were adopted by the board, approving and concurring in the petition, and ordering it and the resolutions to be filed, etc.

It is claimed by appellant, as has been said, that these transactions are not sufficient to show consent on the part of the city, or a selecting and taking of the street within

the terms of said ordinance; or proper consent on the part of the owners.

While upon this record, we think it might be fairly claimed, that the provisions of the act have been substantially complied with, a consideration of the objections raised must necessarily depend upon the determination beforehand of the question made by appellee, as to whether appellant, upon the facts of this case, is in a condition to question the regularity of the proceedings by which the park commissioners acquired, and have since exercised control over Washington boulevard. If the facts and circumstances shown are such as would render it inequitable and improper for appellant to insist upon these objections, it can not avail that such proceedings have not been technically formal and in strict compliance with the statute. Under the state of case here shown, it could not be contended, that either of the parties, to the transfer of the street, is competent to insist upon the informalities here set up, to render void the transaction. And if the city itself could not insist thereon, appellant certainly, in this regard, is in no better situation. After the exercise of control of the street for many years by the park commissioners, with the consent of the city, though never so informally given, and the expenditure by them of hundreds of thousands of dollars thereon, in the way of improvements and betterments, without question of their right so to do, the city would be incompetent to raise the objections here made, on principles of estoppel so plain and fundamental as to require no citation of authority. Nor do we think the individual citizen, who, together with all others affected thereby, has for many years acquiesced in the exercise of authority by a municipality, and has all that time contributed by way of payment of taxes to the support thereof, paid special assessments for local improvements, which he has seen undertaken and perfected, by the expenditure of vast sums of money, and to all which he made no objection, can, after this, be heard to insist upon

want of power in the municipality, upon the ground, that in the original acquisition of control some provision of the law was not technically observed. What would have been the result, had the objections now urged been made, as in *Thorn* v. *West Chicago Park Com'rs*, 130 Ill. 594, at the incipiency of the corporate control by the park commissioners, or in some appropriate direct proceeding, is not necessary to determine. From 1879, when the park commissioners assumed control of the street in question, there has been, for aught that appears in this record, an acquiescence on the part of the people in the authority of the park commissioners, and the exercise by them of the functions of their office. The State, as well as citizens immediately concerned, for practically thirteen years preceding the filing of this bill, has never, so far as we are informed, questioned the regularity of the proceedings whereby the control of the street was transferred from the city to the park commissioners. To now declare such proceedings nugatory and overturn the authority so long and uniformly acquiesced in, on the grounds here insisted upon, would, irrespective of what the real facts were, be of doubtful expediency, if not contrary to sound policy. For, after such lapse of time and acquiescence, if the spirit of the law has been observed, it can not avail that the letter has been disregarded. The Park act, creating the West Chicago Park Commissioners, is to be liberally construed in all courts and places in favor of the jurisdiction and powers thereby conferred, and of the proceedings under the same. (1 Priv. L. 1869, p. 354, section 11.) And in harmony with the views expressed in *McCormick* v. *South Park Com'rs, supra,* such construction can be no less applicable to proceedings for the acquisition of streets leading to the park. As said by Cooley, J., in *Stuart* v. *School District*, 30 Mich. 69: "If every municipality must be subject to be called into court at any time, to defend its original organization and its franchises, at the will of any dissatisfied cit-

izen who may feel disposed to question them, and subjected to dissolution perhaps, or to be crippled in authority and powers if defects appear, however complete and formal may have been recognition of its rights and privileges, on the part alike of the State and of its citizens, it may very justly be said, that few of our municipalities can be entirely certain of the ground they stand upon, and that any single person, however honestly inclined, if disposed to be litigious, or over-technical and precise, may have it in his power in many cases to cause infinite trouble, embarrassment and mischief.''

In that case, a bill had been brought by a tax-payer of the district to restrain the collection of school taxes assessed against the complainants, upon the ground, among others, that there had been no compliance with the law in the organization of the district. In passing upon this point, the court used the language above quoted, and the holding was, that the regularity of the organization of the district, which had assumed to possess and exercise powers of a district regularly organized, for thirteen years, without objection, could not be called in question in such private collateral suit. In *The People* v. *Maynard*, 15 Mich. 470, the court, by Campbell, J., there said: ''Even in private associations, the acts of the parties interested may often estop them from relying on legal objections, which might have availed them if not waived. But in public affairs, where the people have organized themselves under color of law into the ordinary municipal bodies, and have gone on year after year raising taxes, making improvements, and exercising their usual franchises, their rights are properly regarded as depending quite as much on the acquiescence as on the regularity of their origin, and no *ex post facto* inquiry can be permitted to undo their corporate existence. Whatever may be the rights of individuals before such general acquiescence, the corporate standing of the community can be no longer open to question.'' And this lan-

guage was quoted in support of the holding in *Stuart* v. *School Dist.*, *supra*.

In *Jameson et al.* v. *The People*, 16 Ill. 257, by an information in *quo warranto*, the question was raised as to the corporate existence of the town of Oquawka, and of the authority of the president and trustees to exercise the powers and franchises of a municipal corporation. Pleas were filed showing the organization of the corporation in 1851, the election of town officers from year to year thereafter; that it was generally recognized as a public municipal corporation, and exercised powers and franchises as such, passed and enforced ordinances, levied and collected taxes, made contracts and incurred liabilities, provided police regulation, etc. And it was there said: "Municipal corporations are created for the public good—are demanded by the wants of the community; and the law, after long continued use of corporate powers, and the public acquiescence will indulge in presumptions in favor of their legal existence. *United States Bank* v. *Dandridge*, 12 Wheaton, 64; *Dunning* v. *New Albany & Salem Railroad Company*, 2 Carter, 437; *Society of Middlesex* v. *Davis*, 2 Metcalf, 133; *House* v. *House*, 5 Harris and John. 125. The law will incline to sustain rather than to defeat them. It would seem incompatible with good faith and against public policy, although irregularities may have intervened in the organization of the town, now to hold that it is not a body corporate; and we do not think the law requires us to do so." See, also, *People* v. *Farnham*, 35 Ill. 562.

*Worley* v. *Harris et al.*, 82 Ind. 493, was a bill for injunction to restrain the officers of the town of Ellettsville from collecting a tax, upon the ground, that the town had not been properly organized, and that no accurate survey and plat of the territory to be embraced had been made, over which it had assumed to exercise its municipal powers. And the court there said: "How long it had been exercising such powers, is not stated; it may have been acting in

good faith as a corporation, levying and collecting taxes, for more than twenty years, for aught that appears in this complaint. Construing the complaint fairly, we may presume that it had been acting as a corporation for many years. Under such circumstances, its right to so act can not be collaterally questioned."

*State* v. *Leutherman et al.*, 38 Ark. 81, was information in *quo warranto* to test the validity of the incorporation of Arkansas City. The court makes use of the following forcible language: "But it had been an existing *de facto* corporation all the time from 1873 till now; and many things had in good faith been done under it which it would be shocking now to undo. The disastrous consequences would not be confined to the case of Arkansas City. Municipal corporations throughout the State have become numerous. They are not only highly beneficial, but necessary agencies of good government. We can see how many of them may have been heretofore, or may be henceforth, put in operation under the same or similar mistakes. To declare them all null, after long acquiescence on the part of the State, would open a very Pandora's box of litigation, and produce incalculable hardships and confusion."

And after quoting from *Jameson* v. *The People*, and *The People* v. *Maynard*, *supra*, the court say, in respect of the opinions in those cases, that they "are emboldened by them to declare in behalf of the public good, that the State herself may, by long acquiescence, and by continued recognition through her own officers, State and county, of a municipal corporation, be precluded from an information to deprive it of franchises long exercised in accordance with the general law." Without expressing any opinion as to the correctness of the view there taken, the case is important, as showing the extent to which the doctrine has been carried.

But it is insisted by counsel for appellant, that the doctrine enunciated does not apply to the case at bar; that

appellant is not questioning the validity of the original organization of the municipality, but the legality of the particular proceedings by which control of the street was acquired. So far as the right of appellant, to insist upon the objections made, is concerned, we can see no difference in legal effect. If the circumstances are such as would preclude it from questioning the one, no substantial reason can exist why it should not be precluded from questioning the other. To have territory within and upon which the powers conferred can operate, is vital to the corporate entity. If the theory of appellant was correct, the same objection might be made to the proceedings by which the commissioners came into control of the park, and if allowed to prevail, would render their jurisdiction nugatory and their organization ineffectual, notwithstanding years of acquiescence by the public. Only by the exercise of power upon the selected territory, are the contemplated objects of their creation effectuated; deprive them of the territory, and their power therein is gone and can be no longer felt. A Board of Park Commissioners, under the act, without the park, would be like a city council, under the Cities and Villages act, without a city; a Village Board of Trustees, without any village. The one can not exist in practical or legal contemplation without the other. Withdraw the subject over which the municipal power is to be exerted, as the very end and aim for which the corporation was created, and the corporation ceases to exist, except perhaps in legal fiction, and no formality would be necessary to work its dissolution. (1 Dillon Mun. Corp., sec. 110.) And when appellant objects to the proceedings by which the commissioners acquired jurisdiction, the objection is deeper than would seem at first view, and goes to the very thing without which the organization would be a dead letter, and if it were to prevail, would render void all the proceedings of the municipality during the years past, involving the levy and collection of taxes and local assessments, aggregating

a vast sum, expended in the making of great and lasting improvements. To so hold, at this late day, would, in our opinion, be contrary to the clearest principles of public policy.

Without prolonging the discussion, we regard the consensus of authority as sustaining the doctrine, that after long continued acquiescence in the exercise of jurisdiction by a municipality, the validity of the proceedings by which the jurisdiction was originally acquired, can not be called collaterally in question at the suit of a private party. See: *Swift* v. *Williamsburgh*, 24 Barb. 430; *Strasser* v. *Ft. Wayne*, 100 Ind. 443; *Rose* v. *Mayor*, etc., 51 Md. 271; *Sherwin* v. *Bugbee*, 16 Vt. 439.

In view, therefore, of what has been said, it will not be necessary for us to here analyze the proceedings to ascertain whether they have been sufficiently regular to vest the park commissioners with legal control of the street. It appears from the stipulation of facts, filed in the cause August 3, 1892:

"16. That for more than twelve years last past, the said West Chicago Park Commissioners have continuously been in possession and control of said Washington street as a boulevard as aforesaid, and that during that time the city of Chicago has abandoned the possession and control thereof, and during said time neither the city of Chicago, nor any other corporation or person, has in any action, suit or proceeding (other than this suit) called in question the legal right of said commissioners to such possession and control, or of their acts or doings in the premises."

Whatever irregularity or informality may have intervened, such as is shown upon this record, has been cured by the long continued concurrent acquiescence of the city, the park commissioners, and of the general public. We are of opinion that appellant is as much bound by such acquiescence, in which it has participated, as the general public, or any private member of the community might be,

and that, therefore, it is in no condition to insist upon the objections raised in this collateral proceeding.

But it is insisted, that, having acquired the land before it was included within the city limits, appellant was duly authorized, under its charter, theretofore granted, to use such property for railroad purposes and to lay its tracks thereon, and having such right anterior to the acquisition of municipal control, it still has the same right, burdened only with the easement of the public in the street. Appellant became the owner of the land in 1865; in 1869 it was included within the corporate limits, and in 1874 the city of Chicago instituted appropriate proceedings, in the Superior Court of Cook county, to condemn a strip 100 feet wide across said land, for the purpose of extending the street in question; judgment was rendered in favor of appellant for $8,000 for the land taken and damages to land not taken, and the street extended.

Appellant is precluded from this contention by the stipulation upon which the cause was submitted upon the hearing below. As already seen, it was stipulated that the railway company was authorized, by the terms of its charter, to acquire the property and lay its tracks thereon for the conduct of its business. And it is there expressly stipulated:

"And by the same authority, it has the legal right to lay additional tracks parallel with those already constructed, unless the control of West Washington street has been legally transferred from the city of Chicago to the West Chicago Park Commissioners, and if such legal control has been acquired by said commissioners, then said railway company has only authority to lay a third track with the consent and permission of said commissioners, which has not been granted."

And it necessarily followed, that if the chancellor found that the park commissioners were in legal control of the street named, the "railway company was only authorized

to lay a third track with the consent and permission of said commissioners," which it was conceded had not been granted.

It is too familiar to require the citation of authority, that a party will not be permitted, in the court of review, to insist upon error committed at his own instance, or contrary to his express stipulation upon which the lower court was induced to act. The effect of the stipulation was to withdraw from the consideration of the court the question now insisted upon, if it was found that the legal control of the street had passed from the city of Chicago to the park commissioners, and to submit the case upon the latter issue.

The question, therefore, of whether appellant has been deprived of any of its rights under its charter, without due process of law, is not presented for determination. Nor do we find it necessary to discuss or determine whether appellant took its charter powers subject to such future regulation as the legislature, in its sovereign capacity, might provide for the promotion of the common good. *Mugler* v. *Kansas*, 123 U. S. 623; Tiedeman's Lim. Police Power, section 189, and cases cited.

Whatever may be said in respect of the claim of appellant to the ownership of the fee in the street, or its rights under its charter, these rights, under the stipulation, must be regarded as subject to the paramount right of the general public to the use of the street, and its control and improvement, in the discretion of the local municipal authorities, as the public interests may require. *Town of Old Town* v. *Dooley*, 81 Ill. 255; *Palatine* v. *Kreuger*, 121 id. 72; *I. C. R. R. Co.* v. *Chicago*, 138 id. 453.

The chancellor having found, as we have seen he was justified in doing, that the park commissioners were in legal control of the street, under the stipulation of the parties the decree entered necessarily followed, and will be affirmed.