The West Chicago Park Commissioners

*v.*

Samuel H. Sweet *et al.*

*Filed at Ottawa April 3, 1897—Rehearing denied October 7, 1897.*

1. Parks—*effect of permitting city to build viaduct on street which the commissioners are improving.* Acceptance and user by park commissioners of a viaduct built by a city and a railroad company over the latter's tracks in part of a street previously designated by an ordinance of such commissioners to be improved, is not such a relinquishment of jurisdiction to the city as deprives the commissioners of power to subsequently specially assess for the cost of such improvement.

2. Same—*the West Chicago Park Commissioners are "corporate authorities."* The West Chicago Park Commissioners are "corporate authorities," within the meaning of section 9, article 9, of the constitution, and, as such, are properly clothed by statute with power to make local improvements by special assessment.

3. Same—*jurisdiction of park commissioners cannot be questioned in a collateral proceeding.* Park commissioners, whose jurisdiction over streets leading to a park has been established by long unquestioned user under a city's statutory consent, are not bound to establish by proof, in a special assessment proceeding, the regularity of their jurisdiction, which can only be questioned in a direct proceeding.

4. Constitutional law—*what is a sufficient designation of subject of statute in title.* A provision in a statute that a new assessment may be made by park commissioners to pay for improvements completed before the passage of the act, is embraced in the title "An act to enable park commissioners to make local improvements, and to provide for payment therefor," within the meaning of the constitution.

5. Same—*extent of power conferred by the constitution to provide by law for special assessments.* Section 9, article 9, of the constitution, is broad enough to authorize the statutory provision (Laws of 1895,

p. 289, sec. 20,) for successive assessments by park commissioners to pay for an improvement originally provided by a valid ordinance to be paid for by special assessment, where the original assessment has been set aside as invalid. (*City of East St. Louis* v. *Albrecht,* 150 Ill. 506, distinguished.)

APPEAL from the County Court of Cook county; the Hon. O. N. CARTER, Judge, presiding.

H. S. MECARTNEY, for appellants:

Where streets are turned over and accepted, the jurisdiction of a park board is co-extensive with that over parks and other boulevards. *McCormick* v. *South Park Comrs.* 150 Ill. 516.

The acceptance of the driveway in question was adding to the park territory—a legislative act. The consent of abutting owners and the finding of a majority of such frontage consents were legislative acts, and the courts have no power to hold them null on collateral attack. Dillon on Mun. Corp. (4th ed.) sec. 183; *Galesburg* v. *Hawkinson,* 75 Ill. 152; *Indianapolis* v. *Gas Co.* 140 Ind. 246; *People* v. *Farnham,* 35 Ill. 562; *Andrews* v. *Knox County,* 70 id. 65.

In questioning annexation proceedings courts are governed by the same rules as in questioning the exercise of charter powers. *Railroad Co.* v. *Park Comrs.* 151 Ill. 204.

*Quo warranto* on behalf of the State is the proper proceeding by which to test a municipal franchise. Dillon on Mun. Corp. secs. 890, 186, and note; *Mulliken* v. *Bloomington,* 72 Ind. 161.

Even the State is now barred from ousting appellant from exercising jurisdiction over such streets, whether by *quo warranto* or otherwise. *Jameson* v. *People,* 16 Ill. 257; *State* v. *Leatherman,* 38 Ark. 81; 82 Ind. 493; 15 Am. & Eng. Ency. of Law, 955; *Railroad Co.* v. *Park Comrs.* 151 Ill. 204; *People* v. *Farnham,* 35 id. 562.

A tax-payer would also now be barred from questioning such annexation proceedings. *Logansport* v. *Race,* 99

Ind. 117; Dillon on Mun. Corp. sec. 186; *Railroad Co.* v. *Park Comrs.* 151 Ill. 204; *Slosser* v. *Ft. Wayne*, 100 Ind. 443.

The proviso in question affecting proceedings where work had been done prior to the passage of the act is not unconstitutional. Welty on Assessments, secs. 197, 197*a*, 197*b*, 304, 305; Dillon on Mun. Corp. secs. 544, 70, 75, 79, and notes, 419; *Hobart* v. *Detroit*, 17 Mich. 152; *St. Paul* v. *Mullen*, 37 Minn. 78; *Howell* v. *Buffalo*, 27 N. Y. 267; *Mills* v. *Charlton*, 29 Wis. 400.

PECK, MILLER & STARR, and GEORGE W. WILBUR, for appellees:

The improvement for the cost of which this assessment was made is not the same improvement for which the assessment of 1888 was levied, and for this reason the completed work is not such as may be assessed for under section 20 of the act of 1895. *East St. Louis* v. *Albrecht*, 150 Ill. 506.

Section 20 of the act of June 24, 1895, is unconstitutional and void because the subject thereof is not embraced in the title of the act. *Dolese* v. *Pierce*, 124 Ill. 140; *People* v. *Hamill*, 134 id. 666.

Section 20 of the act of June 24, 1895, contravenes section 9 of article 9 of the constitution. Article 9 does not confer authority upon the corporate authorities of cities and villages to levy an assessment to pay for an improvement already done. *East St. Louis* v. *Albrecht*, 150 Ill. 506.

The West Chicago Park Commissioners have no valid authority, under the constitution, to levy a special assessment. *West Chicago Park Comrs.* v. *Chicago*, 152 Ill. 392.

The rule laid down in the *Thorn case*, that the petitioner must, in order to sustain jurisdiction, show compliance with the act of 1879 as to consent of property owners as well as of the corporate authorities of the city, is the law of this case, and is correct. *Thorn case*, 130 Ill. 594.

The decision of this court in the *Thorn case* to this effect is based on a long line of decisions: *Henderson* v.

*Baltimore,* 8 Md. 352; *Bouldin* v. *Baltimore,* 15 id. 18; *Holland* v. *Baltimore,* 11 id. 186; *Kyle* v. *Malin,* 8 Ind. 34; *In re Sharp,* 56 N. Y. 257; *Turrill* v. *Grattan,* 52 Col. 97; *Pittsburg* v. *Walter,* 69 Pa. St. 365; *Boyle* v. *Brooklyn,* 71 N. Y. 1; *Hays* v. *Brooklyn,* 71 id. 459; *Graves* v. *Otis,* 2 Hill, 466; *Voorhees* v. *Bank,* 10 Pet. 449; *Carson* v. *Martin,* 2 Dutch, 594; *St. Louis* v. *Gleason,* 89 Mo. 67.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Under the act to enable park commissioners to take, regulate, control and improve public streets leading to public parks, and to make and collect special assessments, the city of Chicago, by an ordinance passed and approved January 20, 1887, gave its consent that appellants should take, regulate, control and improve the center seventy feet of Twelfth street, from Ashland avenue west to its intersection with Ogden avenue, and thence on Ogden avenue to Douglas Park, in Chicago. This ordinance was passed in pursuance of a petition and consent of owners of frontage on said streets, and it was recited in the ordinance that such consent was by the owners of a majority of the frontage of the lots and lands abutting on the streets taken. On January 24, 1887, appellants accepted control of the streets to be improved and maintained as a boulevard. This was done by a resolution regularly adopted. On January 9, 1888, appellants passed an ordinance for the improvement of these streets by an asphalt roadway forty feet wide, with curbing, etc., and for a special assessment to pay for the same. A special assessment was levied in pursuance of that ordinance, a petition for confirmation of the assessment was filed in the circuit court of Cook county, and the assessment was confirmed July 13, 1888, except as to lands for which objections had been filed. These objections had been filed in the circuit court by George Thorn and others, but they were overruled and a further order of confirmation was

entered, from which the objectors appealed to this court. The judgment of confirmation was reversed and the cause was remanded to the circuit court. (*Thorn* v. *West Chicago Park Comrs.* 130 Ill. 594.) The proceeding having been re-instated in the circuit court, that court, on July 3, 1895, by its order of that date, recited that the petition and assessment roll did not state facts to warrant or enable the court to enter any order of confirmation, whereupon the said special assessment and proceedings were an-nulled and set aside.

About the time that appellants accepted the control of the streets they took possession of them and have ever since been in possession, exercising jurisdiction and cor-porate control over them. The streets have been policed by them and subject to their control ever since. After passing the ordinance for the improvement it was begun, and was completed in 1889, with the exception of a via-duct in place of the asphalt roadway over the railroad tracks on Ogden avenue. After the first petition for confirmation of the special assessment was filed and the first order of confirmation entered, the city of Chicago and the Chicago, Burlington and Quincy Railroad Com-pany, for considerations of public safety and convenience, conjointly constructed the viaduct over the tracks within the limits of the improvement. After the first assess-ment proceeding was set aside by the circuit court ap-pellants filed the petition in this case in the county court of Cook county for a new special assessment of the cost of the completed portion of the boulevard improvement under section 20 of an act in force July 1, 1895, entitled "An act to enable park commissioners or park authori-ties to make local improvements and provide for the pay-ment therefor." The total cost of the improvement was alleged to be $181,578.12, of which $2975.07 was assessed to the park district, and the balance, $178,603.05, was assessed upon property benefited. The amounts paid on the previous assessment were credited, and the balance

above credits allowed was $48,364.84. Appellees appeared and filed numerous objections. There was a preliminary hearing of the objections to entertaining the proceeding, and these objections were sustained and the petition dismissed.

One reason suggested in support of the judgment dismissing the petition is, that appellants had abandoned that part of Ogden avenue within the limits of the viaduct and approaches thereto and had permitted the city of Chicago to resume control, so as to make a break or hiatus in the street as a park boulevard. This does not appear from the record, but the evidence shows, and the fact was conceded, that appellants were in possession and exercising control and jurisdiction over the streets granted. The fact that the railroad company and the city of Chicago had erected a viaduct, which was accepted, used and controlled by appellants as a part of the boulevard, did not oust them of jurisdiction or destroy the general plan of which the viaduct became a part.

It is also argued that section 20 of the act of 1895, under which the petition was filed, is unconstitutional and void, because the subject of making a new assessment to pay the cost of improvements completed before the passage of the act, as provided in that section, is not embraced in the title of the act. The general purpose of the law as declared in the title is, to enable park commissioners or park authorities to make local improvements, and to provide for the payment therefor. The provision for payment, although the local improvement may be completed, is fairly indicated by this title. Article 9 of the City and Village act, under which special assessments are levied by the corporate authorities of cities or villages, is found under the title of "An act to provide for the incorporation of cities and villages;" but that subject, as well as the condemnation of property, the exercise of police power and the operations of different departments of the municipal government, cannot be

said to be foreign to the title or not fairly connected with it. So long as the title does not cover legislation incongruous in itself or having no proper connection with the title the act is not unconstitutional. (*People ex rel.* v. *Nelson*, 133 Ill. 565.) The provision for a new assessment where one assessment has failed is within the general subject of legislation embraced in the title, and the existence of such a section could scarcely operate as a fraud or surprise upon the legislature, as not germane to that subject.

It is also insisted that said section 20 of the act of 1895 contravenes section 9 of article 9 of the constitution, which authorizes the General Assembly to vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment. Section 20 provides for a special assessment to pay for an improvement made, or a completed portion thereof, where a previous assessment has failed or been set aside, and the claim is, that the constitution does not confer authority to levy an assessment for an improvement already made. The case of *City of East St. Louis* v. *Albrecht*, 150 Ill. 506, is cited as holding that article 9 of the City and Village act, which is as broad as the section of the constitution referred to, does not confer such authority. In that case the ordinance providing for the improvement of the street was repealed as to part of it and the improvement abandoned, yet the city persisted in the proceeding to assess the cost of the improvement as originally contemplated. There was no ordinance describing the improvement as made or to be made, as a basis for the assessment. But it was there said that the case was wholly unlike those where an improvement had been ordered by ordinance and the assessment had been annulled or set aside, and that in such cases the existence of an ordinance when the work is done is the basis of the reassessment. In this case there was a valid ordinance for the improvement and for special assessment when the

work was done, and the case referred to does not hold that an assessment cannot be levied for work already completed under those conditions. Said section 20 authorizes the new assessment for the completed portion, and the parties are not asked to pay for the viaduct or that part covered by it, or any more than they are specially benefited. Where the corporation has no power to make a special assessment, or in case the improvement is made without providing for the payment by special assessment, a proceeding of that kind cannot be resorted to; but if the power exists and there is a valid ordinance under which the work is done, the constitution in no way interferes with successive proceedings in pursuance of the ordinance until full payment for benefits is secured.

But it is also said that said section 9 of article 9 of the constitution only authorizes the vesting of power to make local improvements by special assessment in the corporate authorities of cities, towns and villages, and that appellants are not corporate authorities. By the act in force February 27, 1869, the West Chicago Park Commissioners were constituted a board of public park commissioners for the town of West Chicago, and were given full and exclusive power to govern, manage and direct all parks, boulevards and ways authorized by the act, and to levy special assessments on all property by them deemed benefited by the purchase, opening and improvement of such parks, boulevards and ways as limited by the act. This act was adopted by a vote of the people of the town. By the act of 1871 the commissioners appointed under said former act, which had been submitted to the legal voters of the town and adopted, were declared to be corporate authorities of the town for the purposes named in the act. Under this and other legislation appellants compose a municipal corporation, with all the corporate powers and functions in respect to the parks and streets of the city under its control that are conferred by law upon the city of Chicago. (*West Chicago*

*Park Comrs.* v. *City of Chicago,* 152 Ill. 392.) By the first act the power to levy special assessments was reposed in the park commissioners, and the fact that the court was to appoint assessors to spread the assessment in no way affected the question as to who were corporate authorities. In various other acts the legislature has specified the supervisor and assessor, or the trustees, or the supervisor, town clerk and assessor, as the corporate authorities of towns for the purposes of such acts. These declarations by the legislature, both as to appellants and such other officers, are no more than declarations of existing facts, if they have any force other than as a definition of the legislative meaning of the term. It is, of course, to be conceded that if appellants are not in fact corporate authorities of the town of West Chicago the declaration in the act of 1871 would not make them so. But they were given the most extensive and complete corporate authority in the control, management and improvement of the parks and boulevards under an act adopted by vote of the people, and we think they were rightly declared by the legislature to be corporate authorities of the town for such purposes. The power to make local improvements by special assessment has been exercised by park boards for many years, and has been too often recognized to be now questioned. *People* v. *Salomon,* 51 Ill. 37; *Hundley* v. *Park Comrs.* 67 id. 559; *People* v. *Brislin,* 80 id. 423; *Andrews* v. *People,* 84 id. 28; *Smith* v. *People,* 87 id. 74; *Dunham* v. *People,* 96 id. 331; *Kedzie* v. *Park Comrs.* 114 id. 280.

It is further claimed that appellants were bound to prove in this proceeding the sufficiency and regularity of the proceedings by which they acquired the jurisdiction which they had exercised and enjoyed for many years over the streets in question, and to that end must prove that the consent of the owners of a majority of the frontage upon the streets was obtained as a preliminary to the passage of the ordinance by the city of Chicago

and the acceptance by appellants of the streets ceded to them.   It is said that the county court found, as a matter of fact, that the lawful consents did not represent a majority of the frontage, and for that reason dismissed the petition.   This was required in the case of *Thorn* v. *West Chicago Park Comrs. supra;* but in that case, for aught that appeared, the attempt to levy a special assessment was the first act of appellants in a proposed assumption of control and exercise of their corporate powers over these streets.   In *Chicago and Northwestern Railway Co.* v. *West Chicago Park Comrs.* 151 Ill. 204, the right of control of appellants over Washington boulevard, formerly called Washington street, was in question, and the only dispute was whether appellants were in legal control of that boulevard.   One of the objections there made was, that consent in writing of the owners of a majority of the frontage upon the street was not obtained previous to the passage of the ordinance turning the street over to appellants.   It was there said (p. 211): "What would have been the result had the objections now urged been made, as in *Thorn* v. *West Chicago Park Comrs.* 130 Ill. 594, at the incipiency of the corporate control by the park commissioners or in some appropriate direct proceeding, is not necessary to determine."   From the fact that appellants had been in control of that street with the acquiescence of the people the objection was not entertained. This proceeding was instituted many years after the jurisdiction and control of appellants over these streets were established, during which time they had been exercised without interference.   It was proved and conceded that they had been in such control since January, 1887,— more than eight years,—and the fact that they had acquired jurisdiction was never questioned except by the resistance of the objectors to the special assessment in the former proceeding.   The fact of such objection having been made could not operate to oust them of jurisdiction, but the parties concerned and the public stood by

without taking any steps for that purpose. Whatever the objectors' rights might have been when appellants first attempted to assume control of the streets, after such control had been established and exercised so long, without being questioned by any direct proceeding, the rule applied in *Chicago and Northwestern Railway Co.* v. *West Chicago Park Comrs. supra,* must govern. A school tax cannot be resisted on the ground that the lands taxed were illegally annexed to a school district, but the only mode in which such illegality can be inquired into is by a direct proceeding. (*Trumbo* v. *People,* 75 Ill. 561; *People ex rel.* v. *Newberry,* 87 id. 41.) In case of an annexation of territory to a city or village such corporation is certainly not bound for all time thereafter to prove the various steps for annexation and the regularity of the proceedings every time it arrests a person, makes a public improvement, levies a special assessment, enforces an ordinance or does any other corporate act. Such a requirement would be simply disastrous, and the idea could not be entertained for a moment. When these streets were ceded to appellants they were taken into the park system, and there was a *de facto* corporation including them. Appellants will have a right to exercise their corporate powers over them until deprived of that right in some direct proceeding, and cannot be called upon to prove the regularity of the proceedings by which they became a part of the park system in a collateral proceeding for the confirmation of a special assessment. In the *Thorn case* it was not shown the corporation extended *de facto* over this territory, but in this record there is such proof, which calls for the application of a different rule.

The judgment of the county court will be reversed and the cause remanded, with directions to proceed to a trial of the question of benefits, and to take such further proceedings as are not inconsistent with the views herein contained.                    *Reversed and remanded.*