## Ohio & Mississippi Railway Company v. Frank Long.

1. WATER-COURSES—*Duty of Railroads in Crossing.*—It is the duty of a railroad in crossing a stream of water to construct and maintain a water-way required by the natural lay of the land for the purpose of drainage through its road bed so as to inflict no injury on adjacent lands by reason of diverting the waters of the stream.

2. EXPERT TESTIMONY—*Overflow of Waters.*—In an action for damages resulting from an overflow of water, a witness may testify if he knows as to what has caused the overflow of the water in question, although he is not a scientific expert.

3. DAMAGES—*Opinions of Witnesses Competent.*—Opinions of witnesses as to value, form an exception to the general rule that facts alone are admissible. The law has no other standard to fix the value, as a fact, than the opinions of witnesses.

4. NEW TRIALS—*Improper Conduct of Counsel.*—Remarks of counsel in arguments to the jury are not, as a general rule, sufficient cause to set aside the verdict, unless they are of such an inflammatory nature as to prejudice the minds of the jury.

**Memorandum.**—Action for damages caused by an overflow of water. In the Circuit Court of Bond County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Declaration in case; plea, not guilty; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the August term, 1893, and affirmed. Opinion filed March 23, 1894.

The statement of facts is contained in the opinion of the court.

*Plaintiff's instructions referred to in the opinion of the court:*

1. The court instructs the jury that it is the duty of a railroad company so to construct and maintain its road across streams and natural water-courses which it intersects, as to inflict no injury upon adjacent lands.

2. The court further instructs the jury that this duty is a continuous one, and that each overflow, caused by the negligence or want of skill of the company, creates a new cause of action for damages to the crops or other property of the rightful possessor of the lands overflowed, although the plaintiff acquired his interest after the creation of the obstruction; and if the jury believe from the evidence that a portion of the water of Little Canteen Creek naturally flowed south across the right of way of the defendant prior to the filling up of the trestle, and would still continue to do so excepting for the construction of embankment complained of, then they must find for the plaintiff, giving such damages as the jury can say from the evidence that he has sustained, if they further believe from the evidence that he had sustained damage by reason of said embankment and partial obstruction of the flow of water as aforesaid.

*The remarks of counsel which were assigned as error:*

"The testimony of experts in a case should be given no weight; it amounts to nothing as compared with eye-witnesses to an occurrence. In murder cases they usually procure some expert physicians to swear that the criminal was insane, and so in other cases, like this one, they produce experts and pay them $100 or $200 each, and try to overcome the evidence of those who have lived right around the place all their lives and were eye-witnesses to the occurrence. I apprehended, however, that the common sense of the thing could not be overcome by these fine-haired gentlemen, these experts, who make it a business to travel around and testify in any case as experts for $100 or $200. It is a species of bribery to defeat justice."

\*        \*        \*        \*        \*        \*        \*        \*        \*

"Our witness, James R. Miller, I am sorry to admit, has gone back on his own sworn testimony in ten or a dozen different cases; Miller had sworn in the other cases that the damage to the land was caused by the stoppage of this water on account of the closing of the trestle in the Ohio & Mississippi Railway."

\*        \*        \*        \*        \*        \*        \*        \*        \*

"I have the right to say here, and I say it now, that our witness, James R. Miller, went back on us; but is Mr. Frank Long, the plaintiff in this suit, to suffer on account of that? I have brought as witnesses, Thomas Ramey, Mr. Long, Mr. Owens, Mr. Thompson and a half dozen others as respectable and certainly, hereafter, in the estimation of all the people in that neighborhood, towering high above James R. Miller in honesty and integrity and character. I do not propose to come here and have the case of my client suffer at the hands of somebody. It has been the experience of everybody that some friend in whom he has trusted has taken advantage of him and misled and abused him. Benedict Arnold, an honored officer at one time, proved traitor to his country. It is not the first time in the history of nations or of men that men have had fellows whom they relied upon, and who have stood shoulder to shoulder with them, to abandon and run over to the enemy. Many of you that fought through the late rebellion know that some of your comrades fled in the hour of the battle and joined themselves to the enemy on the other side, and such men are not to be trusted hereafter. And in this case I say, I want you to take the testimony of this man Miller as he swore to it."

POLLARD, WERNER & LESTER. attorneys for appellant.

JAMES M. HAY, attorney for appellee.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

The appellee recovered a judgment for damages to his crop from an overflow of water, caused, as alleged, by the negligence of appellant, in closing up a trestle in its road embankment, whereby the water from Little Canteen Creek, that should have gone through said trestle to the south, ran north, upon his land.

The issues tendered by appellant on the facts were, first, that the water from that creek did not naturally run south through said trestle; second, that even if some of the water had run south before the trestle was closed, and was thereafter caused to flow to the north, the damage to appellee's crop was not done thereby, but by other water, the flow of which was not affected by the closing of the trestle. The jury found against the appellant and we are requested to review their finding. In order to do so, we have found it necessary to read the record, from which the conclusions reached upon the evidence are, first, that the trestle that was filled up by the appellant in 1870, formed a way for the

escape of the water to the south, from the Little Canteen Creek, during freshets, which was a natural way for a part of the water to run, in such cases; second, by the filling up of the trestle, water that would have run south was forced to the north, toward the land of the appellee; third, that the crop of appellee, for the destruction of which damages were allowed, was overflowed by water from Little Canteen Creek, which at the time in question was so high as to flood the levee that had been constructed on the south and west of appellee's land; fourth, we are not prepared to say, had Little Canteen Creek had its natural outlet to the south through said trestle for a part of its water to escape in that direction, that it would have raised so high as to overflow the levees constructed to protect appellee's land and destroy his crop. The jury, by its verdict, found that it would not have done so but for such obstruction. There was substantial evidence to support that finding.

It is claimed, however, by the appellant, that deposits would have formed an obstruction to such flow of water, even if the trestle had been left open, and therefore the appellant is not liable.

If the deposits had formed on the appellant's right of way, so as to obstruct such flow of water, it was the duty of appellant to have removed them.

Its duty was not only to construct a water-way required by the natural lay of the land, through its road bed, but its duty also was to maintain such water-way.

The witness Thillman was permitted to state, if he knew, what caused the land of appellee to be overflowed, to which objection was made by appellant on the ground he was merely a farmer and not a scientific expert. It is said the Supreme Court in the case of Nuetzel, 32 N. E. Rep. 529, held such evidence was incompetent. We do not so understand that decision.

It held an expert's evidence was competent on this subject, and not that a non-expert's evidence, based on a knowledge or assumed knowledge of the fact, was not competent.

It is also objected that the appellee was allowed to express an opinion as to the amount of damages he sustained. It is said the ruling permitted the witness to usurp the functions of the jury, who were to determine that question. Opinion of witnesses as to value, form an exception to the general rule that facts alone are admissible.

The law has no other standard to fix the value, as a fact, than the opinions of witnesses (Butler v. Mehrling, 15 Ill. 488–491), except it might be in case of property that had a standard value. The I. & W. R. R. Co. v. Van Horn, 18 Ill. 257–8.

The objection to the second instruction given for appellee is not considered well taken. It ·limited the damages to those sustained by reason of the grievance averred in the declaration.

It was for the jury to separate the causes of damage, if required by the evidence, and fix the amount caused by appellant's unlawful act alone. The instruction was within the rule in C. & N. W. Ry. Co. v. Hoag, 90 Ill. 339.

Error is assigned on statements made by appellee's counsel in his address to the jury.

He criticised, first, the evidence of James R. Miller, who had appeared as a witness in another case to sustain this class of claims, and second, the force of expert evidence. The record does not show that Miller had testified in ten or a dozen other similar cases, as charged, differently from what he did in this case; nor does it show that the experts were paid $100 or $200 apiece, as charged, for their testimony; in those particulars the remarks should not have been made. The counsel, however, had a right to comment, in the way of argument, on the force of expert evidence, and on the fact of any discrepancy that he might have discovered in the testimony of Miller. It would have been well to have omitted some things that were said, but we do not believe the remarks were of that inflammatory character that would or did prejudice the minds of the jurymen. There being no substantial error in the record the judgment is affirmed.