The Illinois Central Railroad Company

*v.*

Charles Smith.

*Opinion filed April 20, 1904.*

1. Evidence—*when admitting opinions of physicians is error.* Permitting physicians to give opinions that plaintiff's foot was injured by being caught between two uneven surfaces, instead of allowing them to describe the injury or limiting their opinions to what might have caused it, is reversible error, where such testimony is the only evidence corroborative of plaintiff's testimony as to manner of injury, which is contradicted by the defendant's witnesses.

2. Instructions—*when instruction in action for negligence is erroneous.* An instruction in an action for personal injuries to defendant's servant is erroneous which holds defendant liable if it had notice of the defect, regardless of the time such notice was received, and which entirely ignores the question of assumed risk which was involved in the case.

3. Same—*instruction authorizing recovery must embrace all essential facts.* An instruction which amounts to a direction to find for the plaintiff if the jury believe the facts stated in the instruction to have been proven must embrace all the facts essential to a recovery upon that theory of the case.

4. Appeals and errors—*the Appellate Court should weigh the evidence upon proper assignment of error.* Under an assignment of error that the verdict is contrary to the weight of the evidence it is the duty of the Appellate Court to weigh and consider the evidence upon controverted questions of fact.

5. Same—*the Supreme Court cannot consider assignment of error that Appellate Court did not weigh the evidence.* The Supreme Court cannot

consider an assignment of error that the Appellate Court refused to weigh or consider the evidence on controverted questions of fact, since error cannot be assigned upon the opinion of the Appellate Court.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Champaign county; the Hon. Solon Philbrick, Judge, presiding.

J. S. Wolfe, and G. W. Gere, (John G. Drennan, of counsel,) for appellant.

Ray & Dobbins, for appellee.

Mr. Chief Justice Hand delivered the opinion of the court:

This is an action on the case, commenced in the circuit court of Champaign county by appellee, against the appellant, to recover damages for a personal injury sustained by appellee while in the employ of the appellant as a section hand and engaged in dumping "gondola" cars loaded with ballast. The declaration contained one count and the general issue was pleaded, and the jury returned a verdict in favor of the appellee for $3000, upon which, after overruling a motion for a new trial, judgment was rendered, which judgment has been affirmed by the Appellate Court for the Third District, and a further appeal has been prosecuted to this court.

The appellee, with one Garretson, was dumping cars. This was done by getting upon the platform at each end of the car and operating a lever. After they had dumped several cars appellee got up to dump another car, and while he was on the platform the train was violently jarred by the shutting down of the locomotive, and his left foot, while he was attempting to save himself from falling, was in some manner caught between the coupling machinery of the cars and crushed. The appellee testified that when the jar occurred he was in the act of

208—39

stepping from the car that had just been unloaded to the platform of an adjoining loaded car; that he was thrown backward, and, to prevent himself from falling, caught hold of the brake of the car he was facing and threw one foot back to the car he had just left; that in the platform of that car, over the draw-bar and coupling machinery and just back of where the "dead-wood" should have been, there was a hole mashed through the planks and a part of the sill which supported them, and that his foot went through the hole and down upon the draw-bar beneath the platform, and was injured. Three witnesses on behalf of the appellant testified they reached appellee before he was released, and that his foot was caught between the lip of the draw-bar and the dead-wood, and that his foot was not in a hole. Five witnesses testified they examined the car on which appellee was injured, immediately after the injury, and that the dead-wood was intact and there was no hole in the platform, and two witnesses testified they inspected the cars of the train of which the car in question formed a part, upon the morning of the injury, and that they were in good repair and there were no holes in the platforms thereof.

Appellee sought to support his testimony, which was otherwise uncorroborated, by the testimony of the two physicians who treated him for the injury. Dr. J. A. Huffman, who saw appellee immediately after the injury, over the objections of the appellant testified, in part, as follows:

Q. "Describe, if you can, how the injury must have been made,—whether with a flat surface or not, or a round surface, or an uneven surface.

A. "My impression is, it was done by some projection penetrating the bottom of the foot.

Q. "How, in your opinion, was the injury inflicted?

A. "By the foot being caught between two projections,—something that would penetrate the bottom of the foot. It would be uneven. It could not have been flat.

Q. "I am asking your opinion as to what kind of surface would cause the twisting of the foot in that way—an even or an uneven surface?

A. "An uneven surface."

Dr. Z. E. Matheny, who was called to see appellee the day of the injury, also testified, over the objection of the appellant, in part, as follows:

Q. "Describe what kind of a surface that injury could have been inflicted by,—whether an even or an uneven surface.

A. "Well, judging from the appearance of the wound, I would judge it was an uneven surface that caused it.

Q. "You may state, after your examination of the foot and seeing its twisted condition, if you have any opinion as to how it was twisted into that shape.

A. "It could have been caught between two uneven surfaces, and twisted around that way; could not have been inflicted by flat and even surfaces."

Appellee testified that his foot was caught between two uneven surfaces, and all of the appellant's evidence tended to show that his foot was caught and crushed between two even surfaces. The evidence on that point was directly contradictory. The first question, therefore, presented for consideration, is, was the testimony of the physicians above set forth competent evidence to be received in corroboration of that of appellee? Three objections are urged against the competency of said evidence: First, that the matter involved no particular science, skill or knowledge in order to formulate the opinion given; second, that the matter could have been concisely and lucidly described to the jury; and third, that the testimony, though in form an opinion, was in reality the statement of the very fact the jury was to determine.

It seems to us clear, if the physicians who were called had confined their evidence to a description of the condition of the foot of appellee as they found it after the injury, the jury, from such evidence, would have been

in as good condition as they to determine whether the injury had been caused by the foot being crushed between even or uneven surfaces, and that to permit the witnesses to testify the injury was caused from the foot being caught between two uneven and not two even surfaces, was to permit them to usurp the province of the jury and to testify to the facts which were to be determined by the jury, which all the authorities agree is not permissible.

In *Hellyer* v. *People*, 186 Ill. 550, which was an indictment for murder, the trial court permitted a number of physicians to give their opinions upon the question as to whether or not the wounds found upon the body of the deceased were such as would likely have been inflicted upon a person, while living, by being struck by a railroad train running at the rate of thirty-five miles per hour. This court held the evidence incompetent, and on page 558 said: "The subject of the proposed injury [inquiry] was a matter of common observation, upon which the lay or uneducated mind is capable of forming a correct judgment. In regard to such matters experts are not permitted to state their conclusions. In questions of science their opinions are received, for in such questions scientific men have superior knowledge and generally think alike. Not so in matters of common knowledge. (*Milwaukee and St. Paul Railway Co.* v. *Kellogg*, 94 U. S. 469.) 'Whenever the subject matter of inquiry is of such a character that it may be presumed to lie within the common experience of all men of common education moving in the ordinary walks of life, the rule is that the opinions of experts are inadmissible, as the jury are supposed, in all such matters, to be entirely competent to draw the necessary inferences from the facts testified of by the witnesses.' (Rogers on Expert Testimony, sec. 8; *Ohio and Mississippi Railway Co.* v. *Webb*, 142 Ill. 404.) As a general rule, the opinions of witnesses are not to be received in evidence merely because such wit-

nesses may have had some experience or greater opportunities of observation than others, unless such opinions relate to matters of skill and science. (*Robertson* v. *Stark*, 15 N. H. 109; *Marshall* v. *Columbian Ins. Co.* 7 Fost. (N. H.) 157; *Protection Ins. Co.* v. *Harmer*, 2 Ohio, (Warden,) 452; *People* v. *Godine*, 1 Denio, 281; *Westlake* v. *St. Lawrence, etc. Ins. Co.* 14 Barb. 206; *Smith* v. *Gugerty*, 4 id. 614; *Folkes* v. *Chudd*, 3 Doug. 157; 1 Smith's Lead. Cas.—5th Am. ed.— 630; *Daniels* v. *Mosher*, 2·Mich. 183.) An expert cannot be asked whether the time during which a railroad train stopped was sufficient to enable the passengers to get off, (*Keller* v. *Railroad Co.* 2 Abb. App. Dec. 480,) or whether it was prudent to blow a whistle at a particular time. (*Hill* v. *Railroad Co.* 55 Me. 438.) Nor can a person conversant with real estate be asked respecting the peculiar liability of unoccupied buildings to fire. (*Mulry* v. *Insurance Co.* 5 Gray, 541.) The opinions of witnesses should not be asked in such a way as to cover the very question to be found by a court or jury. (*Chicago and Alton Railroad Co.* v. *Springfield and Northwestern Railroad Co.* 67 Ill. 142.) Where the matter inquired about requires no special knowledge, and may be determined by a jury upon a sufficient description of the facts in regard to it, it is not proper to receive the testimony of experts.—*Hopkins* v. *Indianapolis and St. Louis Railroad Co.* 78 Ill. 32; *City of Chicago* v. *McGiven*, 78 id. 347; *Pennsylvania Co.* v. *Conlan*, 101 id. 93."

In *Chicago and Alton Railroad Co.* v. *Lewandowski*, 190 Ill. 301, which was a personal injury case, the appellant called a number of railroad men as expert witnesses, who testified that in their judgment a person could not be struck by a locomotive engine pulling a train of freight cars and running at the rate of twenty-five or thirty miles an hour, and survive, while the appellee called a number of medical men who testified that in their opinion a person could be struck by a train moving at said rate of speed and thrown that distance, or even a greater dis-

tance, and live. On page 309 the court said: "It is said it was error to allow the medical witnesses to give expert testimony upon such subject, as it called for their opinions upon subjects that were outside of their profession. We think the record shows that the witnesses for the appellee were as well qualified to speak upon the subject as those called by the appellant. We are of the opinion, however, that the subject inquired about was not a proper subject for expert testimony, but as the error was invited by appellant it cannot now complain. The subject of the proposed inquiry was upon a matter of common observation, upon which the jury were capable of forming a correct judgment, and upon which they would be more likely to be misled and confused, than enlightened, by the opinions of the so-called experts."

In *Treat* v. *Merchants' Life Ass.* 198 Ill. 431, where the defense interposed to the policy was suicide, on page 436 the court said: "The court did not err in refusing to permit Dr. Mathews to express an opinion as to whether the wound was accidentally or purposely inflicted. That was a question for the jury to pass upon after they had been put in possession of the facts surrounding the death of Helliwell."

In *City of Chicago* v. *McGiven*, 78 Ill. 347, which was an action on the case to recover damages claimed to have been sustained by the plaintiff falling upon a sidewalk by reason of having stepped upon a piece of glass which was imbedded in the walk for the purpose of affording light to the area under the walk, the plaintiff, upon the trial, called a number of architects, and against the objection of the defendant proved by them that in their opinion a glass such as that which the evidence showed was inserted in the sidewalk and upon which the plaintiff claimed to have slipped and fallen, was unfit to be used as a part of the walk and was unsafe for such use. On appeal it was held the admission of the testimony was reversible error. In disposing of the question it was

said (p. 349): "The general rule is, that the opinions of witnesses are inadmissible as evidence; that they are to testify to facts, and the jury are to draw the inferences and form the opinions which are to govern the case. The present case is supposed to come within the exception to the rule, that on questions of science, skill or trade, or others of the like kind, persons of skill, sometimes called 'experts,' are permitted to give their opinions in evidence. But this is on the ground of necessity, when the facts in issue are not themselves accessible by evidence, and it is a matter of necessity to call in the experienced or instructed opinions of such witnesses. The opinions of witnesses should not be received as evidence where all the facts on which such opinions are founded can be ascertained and made intelligible to the court or jury. (*Clark* v. *Fisher*, 1 Paige, 174; *Mayor, etc. of New York* v. *Pentz*, 24 Wend. 668; *Linn* v. *Sigsbee*, 67 Ill. 75.) * * * The question whether the glass was unsafe by reason of the too great smoothness or slipperiness of its surface was not a question of science or skill. The decision of that question required no special knowledge, and it was easily determinable by the jury upon a sufficient description of facts pertaining to the glass, and the use of it in a sidewalk, being given by witnesses. We do not perceive why mere proof of the naked facts could not enable the jury themselves to draw the inference whether the glass was safe or unsafe. The real question for the jury was, not whether the glass was safe, but whether it was reasonably safe. The not improbable effect of obtruding upon the jury the opinions of these architects that the glass was unsafe, might be that the jury would regard them as deciding the whole question, and so accept them, and repose on them as such, without further inquiry and deciding for themselves whether the sidewalk might not have been reasonably safe."

In *Chicago and Alton Railroad Co.* v. *Springfield and Northwestern Railroad Co.* 67 Ill. 142, which was a condemnation

suit, the contractor of appellee was called as a witness and asked, "If you put in the cut the work you propose to do and have described, what would be the damages to the defendant?" to which he replied, "There would be no damage." In sustaining an exception to the question this court held the question called for an opinion covering the very question which was to be settled by the jury, and left to the jury no duty but that of recording the finding of the witness; that it permitted the witness to usurp the province of the jury, and that it was not competent to ask the opinion of an expert witness in such way as to cover the very question to be found by the jury.

In *State* v. *Rainsbarger*, 74 Iowa, 196, counsel for defendant asked a witness, who was a physician, "how the wounds upon the defendant were probably made." The trial court excluded the evidence. The Supreme Court, in reviewing the ruling upon that question, said (p. 204): "The evidence was rightly excluded. It sought for an expression of opinion based upon matters which were to be weighed and considered by the jury, and determined upon the exercise of their own judgments, and not upon the opinion of another. The matters upon which the question was based were not peculiarly within the knowledge of the witness or of the profession to which he belonged."

In *People* v. *Hare*, 57 Mich. 512, a physician who had examined the wound was asked, "From the appearance of the wound, what would you say it was caused by?" The court said (p. 512): "We think the objection to this question was well taken. * * * The question calls for the fact which was to be found by the jury. What might have caused it would have been proper, but what did cause it was the real question for the jury."

In *Cannon* v. *People*, 141 Ill. 270, Dr. Applington was called as a witness by the People. He testified that he assisted at the *post mortem* examination of the body of the deceased, described the nature, character and extent

of the wounds, and stated which wound, in his opinion, was the immediate cause of death.    He was then shown a pair of shears, and asked, "Examine these shears, and tell the jury whether or not the wounds upon the body of Martin Ryan were likely to have been produced with that instrument."    He answered, "They could have been produced with that instrument,—yes, sir."    The court, on page 277, said:    "The question was clearly improper and invaded the province of the jury.    The question whether the wounds were or were not inflicted in the manner alleged in the indictment, or with the instrument alleged, was one of fact for the jury to determine from all the evidence, and in no sense was the proper subject of opinion by experts."

The appellee has referred to a number of decisions of this court, notably *Illinois Central Railroad Co.* v. *Latimer*, 128 Ill. 163, *Village of Chatsworth* v. *Rowe*, 166 id. 114, *Illinois Central Railroad Co.* v. *Treat*, 179 id. 576, *Shorb* v. *Webber*, 188 id. 126, and of the courts of last resort in other States, which, it is insisted, sustain the position that the opinion evidence above referred to is competent.    An examination of those cases discloses the fact that they, generally, are cases where physicians have been allowed to express an opinion as to what might have caused the injury the cause of which was then being investigated, but none of them, so far as we have been able to discover, sustain a course of examination which calls for an opinion from the expert as to what caused the injury, and they all recognize the fact that the question of what did cause the injury is a question of fact for the jury, and not for the witness.    In the *Latimer case* a physician was permitted to express the opinion that fright would cause heart trouble; in the *Rowe case*, to state the condition which he found in the plaintiff's knee could have been produced by a fall upon a sidewalk; and in *Lacas* v. *Detroit City Railway Co.* 92 Mich. 412, that a violent fall might produce displacement of the womb.    The opinions of the

physicians here were expressed upon a vital and closely contested point in the case. They were not asked how the injury, in their judgment, might have occurred or been produced, but the questions propounded to them were, "How the injury must have been made," "How, in your opinion, was the injury inflicted?" and it was ruled, "If he knows, or if he has any idea how it was made, he can tell;" "If he has any opinion, after examining the wound, as to how it occurred, he may state it." It is apparent from the questions and answers and the rulings of the court, that the opinions of the physicians took the form, not of opinions as to how the injury might have been produced, but of direct testimony as to how it occurred and what caused it, which was the very question which the jury were called upon to decide. In view of the evidence, which was in irreconcilable conflict upon the question as to how the injury occurred, the testimony of the physicians necessarily had great weight with the jury in determining that question, and in all probability aided in producing a verdict in favor of appellee which otherwise might have been in favor of the appellant.

At the instance of appellee the court gave to the jury the following instruction:

"The court instructs the jury that while it devolves upon the plaintiff in this cause to establish his case by a preponderance of the evidence, yet by this it is not meant that he must necessarily produce the greater number of witnesses, but simply that he must prove his case by evidence shown on the trial which outweighs that produced on behalf of the defendant, where the whole evidence is considered together; and if the jury believes that the greater weight of evidence in this case establishes that the platform was out of repair, as alleged, and that such condition of the platform was the cause of his injury, and that the condition of such platform was the result of defendant's negligence, and that the defendant had notice thereof, and that at the time the plaintiff

stepped upon such platform, (if you believe, from the evidence, that he did step upon it,) he was in the exercise of due care for his own safety, then the plaintiff will be entitled to recover."

The evidence was conflicting, and it was essential to a proper trial of the case that the jury be correctly instructed as to the principles of law which should govern them in a decision thereof. We think the instruction subject to two criticisms: First, it states if the appellant had notice of the defective condition of the platform it would be liable, regardless of the time when it received such notice; and second, it ignores the question of assumed risk. In order that the appellant might be held liable for the defective condition of the platform it was necessary that it have notice of such defective condition for a sufficient length of time to enable it to notify appellee thereof or to repair the same, and if appellee had notice of the defective condition of the platform and continued to work upon it without objection, he assumed the risk of being injured by reason of such defective condition; (*Goldie* v. *Werner*, 151 Ill. 551; *Chicago and Eastern Illinois Railroad Co.* v. *Heerey*, 203 id. 492;) and the instruction was not cured by the instructions given on behalf of the appellant, as the jury were directed thereby, if they found the facts therein to be true, that plaintiff was entitled to recover. In *Pardridge* v. *Cutler*, 168 Ill. 504, on page 512 it was said: "The law applicable to different questions may be stated in separate instructions, and the entire law applicable to all the questions involved in a case need not be stated in each. In such case the instructions supplement each other, and if they present the law fairly when viewed as a series, it will be sufficient. But if an instruction directs a verdict for either party, or amounts to such a direction in case the jury shall find certain facts, it must necessarily contain all the facts which will authorize the verdict directed."

It is also assigned as error that the Appellate Court refused to consider all the evidence in the case or to weigh the evidence upon controverted questions of fact presented to that court for decision. It was assigned as error in the Appellate Court that the verdict is contrary to the manifest weight of the evidence. This court has held it is the duty of the Appellate Court, upon such assignment of error, to weigh the evidence and determine whether the verdict is against the weight of the evidence, as that court, upon such an assignment, is the only appellate tribunal in this State that can determine that question, since this court, in actions at law, is permitted, under the statute, to review only questions of law. (*Voigt* v. *Anglo-American Provision Co.* 202 Ill. 462; *Chicago City Railway Co.* v. *Mead*, 206 id. 174.) The statute requires that the opinions or decisions of the Appellate Courts upon the final hearing of cases therein pending shall be reduced to writing and filed in the case in which rendered, and the rules of this court require that in all cases brought from the Appellate Courts to this court the party bringing the same to this court shall file, as an appendix to his brief, or otherwise, a copy of the opinion of that court rendered in the case, including the statement of facts, and although this court may rightfully look into such opinion for the purpose of advising itself as to the questions considered and how they were disposed of by the Appellate Court, error cannot be assigned upon the opinions of said courts, and this court is powerless to consider the assignment of error that said court refused to weigh or consider the evidence upon controverted questions of fact presented to that court for its determination and decision.

For the errors pointed out herein the judgments of the Appellate and circuit courts will be reversed and the cause remanded to the circuit court for a new trial.

*Reversed and remanded.*