# City of Chicago v. P. H. O'Donnell, Administrator.

## Gen. No. 12,053.

1. HYPOTHETICAL QUESTION—*must not invade province of jury.* A question which hypothetically states alleged evidentiary facts to an expert and asks such expert to give his opinion from such facts as to the cause of an explosion, invades the province of the jury and is therefore improper.

2. HYPOTHETICAL QUESTION—*when improper.* A hypothetical question is improper where it omits important undisputed facts. (So held notwithstanding omissions were not specifically pointed out in the objection to the question.)

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Reversed and remanded. Opinion filed December 22, 1905. Rehearing denied January 5, 1906.

**Statement by the Court.** Appellee as administrator of the estate of Owen Langdon, deceased, recovered a judgment in the Superior Court of Cook county, in an action on the case, against appellant for damages for the alleged negligence of appellant causing the death of deceased.

The declaration consists of two counts. The first count alleges that before and on the 6th day of February, 1900, the defendant possessed and operated an electric light and power station at 299 South Halsted street in the city of Chicago; that it was the duty of defendant to use reasonable care to provide such boilers, steam pipes and other apparatus as was suitable and safe for the production of steam and electricity, and to keep all such fittings in reasonably safe repair and condition for the safety of its employees and others about them in the course of their employment; that it was also the duty of defendant to employ suitable safeguards, safety appliances, fusible plugs and other precautions against the bursting or derangement of said pipes and appliances, and against the injury of the employees and servants of de-

fendant then and there employed under the direction of said defendant; that the said defendant knew or by due inspection would have known that certain of the pipes, flanges and joints were insufficient and defective; that the defendant disregarded its duty in the premises and negligently failed to supply such suitable steam pipes, flanges, etc.; that on February 6, 1900, plaintiff's intestate was employed by the defendant on work being done for it, as steamfitter in said plant and was exercising all due care for his own safety; that certain steam pipes, flanges, gaskets, joints and other appliances were defective and by reason thereof and of the negligence aforesaid certain of the steam pipes, fittings and joints gave way and burst, and steam therein contained, under great pressure expanded and escaped, whereby the deceased was burned and scalded and received injuries from which he died; that said deceased left him surviving his widow and five children, and that said deceased was their only means of support and education and by his death they were deprived of their means of support.

The second count is the same as the first, except it alleges that defendant knew or might have known that said pipes, etc., were defective and that not regarding its duty in the premises it suddenly and without warning and carelessly turned a great quantity of steam into said pipes, etc., and certain of the joints, flanges and connections thereupon burst and the escaping steam burned and scalded said deceased, from which he soon died.

A plea of general issue was filed.

The engine room of the plant in question is about 160 feet long and 50 feet wide. A brick wall at the west end of the engine room, about 18 feet high, separates it from the boiler room.

On the north side of the engine room are two low pressure engines using about eighty-five pounds of steam and known as Engine No. 1 and Engine No. 2, and in the south-east corner of the engine room was located a high pressure engine known as the Elms engine. There were pipes conveying the steam from the boilers to the engines.

On February 6, 1900, four men in the employ of E. S. McDonald, an independent contractor, were engaged in repacking joints in the steam pipes in the engine room. This was done by putting gaskets in the joints. After the gasket had been put in at the joint in question Stapleton, the foreman in charge of the work, requested steam to be turned on for the purpose of testing the work. The employees of the city turned on the steam and in a few minutes the flange of the joint in which a gasket had just been inserted broke and the escaping steam so burned Langdon that he died shortly afterwards from the effect.

JOHN F. SMULSKI, City Attorney, for appellant; EDWARD C. FITCH, of counsel.

McGOORTY & POLLOCK, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

Upon the trial appellee called Mr. Whelan as an expert engineer and after qualifying him by preliminary questions propounded to him the following question:

"Q. Assume that on the 6th day of February, 1900, in a certain steam power plant there were two certain boilers, that these boilers were situated in a room known as the boiler room, about fifty feet one way and eighty feet the other; that the building containing this plant was about 200 feet in length and about eighty feet in width; that there was brick partition or wall separating the boiler room from the engine room; that in the engine room were situated three engines; one in the south-east corner of that engine room and the other two engines on the north side of the engine rooms; towards the north-west corner; that these respective engines were connected with the boilers by two certain lines of pipe, one line of pipe extending to the engine in the south-east corner and one line of pipe to the other two engines just described; that the steam was sent to the engines on the north side of the engine house and also to the other engine by two

lines of pipe forming the segment of a circle joined and in themselves forming a bend shaped like an inverted letter "U" joined to the main pipe known as the main header; that this main header extended nearly the length of the boilers, in a straight easterly direction for a distance of about twenty-five feet; that one line of pipe went to the engine in the south-east corner and the other line of pipe went in a northerly direction and then dropping a short distance extending in a straight line through the boiler wall for a distance of about twenty feet to this first engine; this engine was connected with the main line of pipe, ten inches in diameter, by a pipe about six inches in diameter; that the extension of this line from the first engine on the north side of the power house to the next engine was eight inches in diameter, and that this eight-inch pipe was connected with the second engine by a pipe of six inches in diameter; that this line of pipe was provided with a system of bleeders or drainage; that between the boiler room and the first engine the pipe was not anchored; that between the first and second engine there were two U's or bends in the pipe which were there eight inches; that this line of pipe and fittings were what is known as standard pipe and fittings; that they were put in there to withstand a steam working pressure of not to exceed 125 pounds; that the engine in the corner of the engine room—the south-east corner—required a pressure of not less than 150 pounds; that on the day in question there were certain men there for the purpose of putting gaskets in certain joints or flanges upon this line of pipe leading to the two engines; on the north side of the engine house; that they had put in several gaskets, including a gasket in a flange immediately opposite No. 1 engine and forming the portion of the T with which the pipe extending from the ten-inch pipe connected No. 1 engine; that the work had been done in a proper workmanlike manner; that the joints were brought together without any undue strain on the pipe or fittings; that in the evening of that day the steam was turned on from the boilers at a pressure of about 160 pounds to the square inch; that this plant ran for about fifteen minutes

and the steam was then shut off because of the blowing out of a gasket in a condenser or two-inch pipe in the engine in the south-east corner of the plant; that after about twenty-five to thirty-five minutes the steam was again turned on, passing through both lines of pipe; that a certain party was unable to open the header valve without assistance and that he was assisted in that by another man there; that they both ascended to the top of the boiler within a space of one and a half to two minutes, opened the by-passes and valves there, causing 160 pounds of steam to be sent through the header to the two lines of pipe; that within two or three minutes following the turning on of the steam an explosion occurred in the steam pipe in the engine room in the flange opposite the engine on the north side—the engine nearest the boiler wall burst, and that then this line of pipe burst in other places, including the flange opposite the second engine forty-two feet to the east, and the fittings of both engines, and that following the steam there was a great volume of water surging through this pipe to such an extent that there was about four inches of water on the floor there; I will ask you, under those circumstances, taking into consideration all the facts stated in this hypothetical question, what in your opinion was the cause of the explosion?

(Defendant objects to the question, because it contains negative propositions and is argumentative and does not state the evidence correctly.)

Assume, also, that the gasket that was inserted in the ten-inch flange was one-eighth of an inch or more thicker than the gasket that had been removed.

THE COURT: Do you want to add anything to your hypothetical question?

MR. McGOORTY: I do not, your Honor.

THE COURT: You may answer.
(Exception by defendant to the ruling of the court.)

MR. McGOORTY: The question is, what was the cause of the explosion under those circumstances?"

The witness answered in substance that "The cause of the explosion, in my opinion, under those circumstances, was a rush of water passing through there and coming up when the valves were suddenly opened, and with the amount of condensation that had taken place in the pipe during the time that the plant was shut down after steam being first turned on caused what is known among practical engineers—because of the water hammer. In other words, the velocity of the steam in traveling through the pipe carries that water ahead; the water forms a head, a wall or plunger, filling almost the full area of the pipe.

MR. McGOORTY: Carries what water ahead?

A. The water that is condensed in there and also the water that was drawn or siphoned over with the steam; it would form a ram, which would meet a certain amount of contraction, having a tendency to pull the pipe apart and immediately on striking an elbow or obstruction or a reduction in area of the outlet of the pipe it would form then a hammer with a pushing effect, and there would also be a counteracting or back rush, and the force of those blows are tremendous when we stop to think of it—the force of the blows is tremendous and the drip pipes put in for the purpose of carrying away ordinary condensation due to turning atmosphere into the pipes were not large enough to carry off any larger volume of water of that kind."

It was error to permit the witness to answer the above question. It called for the opinion of the witness as to the cause of the explosion. That was a question for the jury to pass upon after they had been put in possession of the facts. I. C. R. R. Co. v. Smith, 208 Ill., 608, and cases there cited. This court considered this precise point in City of Chicago v. Powers, 117 Ill. App. 453.

The question is also improper because it does not state all the undisputed and important facts before the jury. It

called for the opinion of the witness upon a system of steam pipes materially different from that shown by the evidence.

The answer of the witness was damaging and injurious to the defendant's case. For this error the judgment is reversed and the cause is remanded.

*Reversed and remanded.*