## Elsie J. Paisley et al., Appellees, v. American Zinc Company of Illinois, Appellant.

### Gen. No. 7,728.

1. PLEADING—*waiver of misjoinder of parties.* In an action for damages where one of two joint plaintiffs died and the court made an order granting leave to substitute her heirs and defendant did not object to such order and did not demur to the declaration but entered into a stipulation that the action was to be tried on the theory that the damages recoverable, if any, are permanent damages, waived any question there might be as to a misjoinder of parties.

2. HARMLESS ERROR—*rulings on evidence in close cases must be accurate.* In an action for damages resulting to plaintiffs' land from fumes from defendant's smelter located near it where the testimony is in direct conflict as to whether the gas and fumes from defendant's plant had any injurious effect upon the soil, crops, shrubbery or vegetation on plaintiffs' land or any tendency to injure such land, it is necessary that the court's rulings upon the admission and rejection of testimony should be free from substantial error.

3. EVIDENCE—*when opinion evidence of non-experts inadmissible.* In an action for damages to land claimed to have resulted from the operation of defendant's smelter located near it where witnesses testifying for plaintiffs were not qualified as experts as to the properties or nature of the gases, fumes or smoke emitted from the smelter, permitting them to give their opinions as to the effect of the gases and fumes upon vegetation and to testify that the depreciation in the value of plaintiffs' property was due to defendant's smelter, constituted a usurpation of the functions of the jury and was prejudicial error.

Appeal by defendant from the Circuit Court of Montgomery county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the April term, 1924. Reversed and remanded. Opinion filed October 7, 1924. Rehearing denied and opinion modified October 7, 1924.

A. W. KOPP and HILL & BULLINGTON, for appellant.

J. EARL MAJOR and JOE MAJOR, for appellees.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

This is a suit brought by appellees against appellant to recover damages for injury caused by the smelting plant of appellant to a 79-acre tract of land owned by appellees, in the vicinity of said smelter. It is charged that the gases and fumes from the zinc and zinc oxide plant of appellant spread over the lands of appellees and destroyed the vegetation and unfitted the lands for raising crops and damaged appellees permanently, in the value of said lands, in the sum of $4,000. A full statement of the case may be found in *Leetham v. American Zinc Co. of America, post,* p. 636, passed upon at this term of the court. There was a verdict and judgment for appellees in the full amount claimed, and appellant has brought the case to this court by appeal for review.

This suit was first brought in the name of Elsie J. Paisley and Edna Paisley, the owners of the land, and after the original declaration was filed Edna Paisley died. Her death was suggested upon the record and leave given by the court to substitute her heirs as parties plaintiff to the suit and to file an additional count to the declaration. This additional count was filed, the declaration showing the death of Edna Paisley and the substitution of Minnie M. Paisley and Bertha P. Benedict, the sisters and only heirs at law of said Edna Paisley, as parties plaintiff, with said Elsie J. Paisley, and appellant filed the general issue.

Upon the impaneling of a jury the following stipulation was entered into: "It is hereby stipulated and agreed by and between the attorneys for the respective parties to this suit, that this cause shall be tried by both parties on the theory that the plant of the defendant is operated as a permanent one and that the damages recoverable, if any, are such as are known to the law as permanent damages, and the question of the statute of limitations is not to be raised in said cause."

Upon appellees' offer to prove the heirship of Edna Paisley, appellant objected on the ground that the heirs at law of Edna Paisley are not proper parties to this suit and that there is a misjoinder of parties plaintiff. This question is again raised in the case by an instruction asked for at the close of plaintiffs' case and at the close of all the evidence by appellant and refused. Appellant did not object to the court's order permitting the substitution of parties plaintiff and did not demur to the declaration. Much attention is given by counsel on both sides to a consideration of sections 11, 12 and 13 of chapter 1 of the Revised Statutes, "Abatement." [Cahill's Ill. St. ch. 1, ¶¶ 11-13.] There is no question in the record but that the appellees are the owners of the legal and equitable title to the lands in question. In the opinion of this court, appellant, by not raising the question upon the pleadings as entered in this suit, and by entering into the stipulation cited, has waived any question there may be as to a misjoinder of parties. *Chicago & N. W. Ry. Co. v. West Chicago Park Com'rs,* 151 Ill. 204, and *Franklin Union No. 4 v. People,* 220 Ill. 364.

In *Chicago & N. W. Ry. Co. v. West Chicago Park Com'rs, supra,* it is held:

"It is too familiar to require the citation of authority, that a party will not be permitted, in the court of review, to insist upon error committed at his own instance, or contrary to his express stipulation upon which the lower court was induced to act."

And in *Franklin Union No. 4 v. People, supra,* it is held:

" 'With regard to the proper method of objecting to incapacity of plaintiff to sue in actions by unincorporated associations the usual rules apply, and such objections may be waived or cured in the usual manner. Thus, where the bill, declaration or complaint shows, upon its face, want of interest or capacity to sue, the proper method of taking advantage of the defect is by demurrer, but where the defect does not

thus appear, the objection must be raised by plea or answer.' (22 Encyc. of Pl. & Pr. 238.)''

The evidence in this case is sharply conflicting and each side is supported by nearly an equal number of witnesses, none of them having any special knowledge or skill in the chemical qualities or effects produced by whatever gases or fumes may have emanated from appellant's plant. The nearest point of appellees' property to the zinc plant is about one-fourth of a mile southeast, and the land extends to the south and east.

The testimony of appellees tends to show that the lands in 1916 and 1917 were of the value of $70 and $75 per acre, and that now said lands have no value; that appellant's plant is composed of a number of buildings, including an acid plant and a zinc oxide furnace building; that raw ore is roasted to burn out the sulphur and zinc sulphide into zinc oxide; that sulphuric acid is manufactured from sulphur gases roasted out of the zinc ore; that during the war period sulphur was brought into the plant and the acid making capacity increased; that crude sulphur in its crystal form is a yellow acid and zinc oxide; that during the war about 100 tons of sulphuric acid were produced per day and about 40,000 pounds of zinc oxide; that at the time of the trial the plant was operating at about 50 per cent capacity.

For the purpose of showing that the plant was capable of producing the injury complained of, evidence was admitted as to the condition of other land in the neighborhood of appellant's plant, and the evidence tended to show that from the plant southeast to appellees' property the ground was as bare as a floor, and that this condition also exists north of the plant for practically one-half mile. The evidence also tended to show that this land surrounding the smelter, at the time it commenced to operate, was good blue grass land.

Louis Bandy testified he had lived on the Paisley farm for three years; that he farmed the west forty in 1920; that he had part of it in cowpeas which came up all right, little holes came in the leaves and they burned up and died; that when the wind was in the northwest he could see coal smoke coming from one of the stacks and red sulphur looking smoke coming out of the other, which would settle on the Paisley farm; that it smelled like gas and burned his eyes and nose; that something fell out of the smoke and settled on the pea leaves, and that they would turn yellow and holes come in the leaves; that the blue grass growing in the orchard at the Paisley farm is mostly killed out on the north side of the house; that when he had his garden on the east side of the house, where it was protected, he raised garden, but that when he put it on the west side he raised nothing.

There was further testimony tending to show that the trees, shrubbery, grass and vegetation on appellees' lands had been gradually destroyed since 1916 and 1917, and the witnesses testified to seeing the smoke and red sulphur looking smoke coming out of the chimneys at appellant's plant, and smelling the gas and fumes.

On the other hand, the testimony of appellant tends to show that the dwelling house on the premises in question was in the southwest corner of the east forty and that it was 3,600 feet from the dwelling house to the acid plant of appellant; that this land originally belonged to John Paisley, father of Elsie and Edna Paisley, and after his death the mother and two daughters lived on the farm for about ten years, when the family moved to Hillsboro about twenty years ago; that during the first ten years the lands were controlled and leased by the mother and after that by a lawyer and one of the daughters.

The testimony of appellant further tends to show that the improvements are old, unsightly and un-

painted, in bad repair, the fences dilapidated and the lands in a poor state of cultivation, and in the hands of tenants for thirty years; that only in one year during that period has the land had any fertilization whatever, and then only a small amount of barn manure was put upon the land.

The testimony of all the witnesses described the land as a white, thin soil. Appellant's plant had operated since 1912 and, from the testimony, had not injured the lands prior to 1916 and 1917.

The testimony of the witnesses for the appellant was to the effect and tended to show that the yard, the orchard and all of the premises that had not been plowed and replowed for thirty years had the original bed of blue grass upon it that was there thirty years ago. At the time of the trial, which was in November, 1923, the witnesses described the blue grass as being green, almost knee high, and it was all over the unbroken and unplowed portion of the premises, and this testimony is further corroborated by photographs taken of the vegetation, grass, shrubbery and trees on the land at various times and from different viewpoints.

Appellant introduced the testimony of three or four real estate dealers living in the vicinity of said lands. Appellant's witnesses described the lands as light, thin and worn out, never having been fertilized to their knowledge and nonproductive from its long use and lack of care and no fertilization in the hands of tenants. Those acquainted with the value of lands in that vicinity placed a value upon these lands of $40 to $50 per acre during the years from 1911 to 1917, when there was an increase in the value of all lands caused by the war, and in the opinion of these witnesses appellees' lands did increase in value to about $60 per acre in about the year 1919, which marked the peak of the high prices for land in the country generally, since which time appellant's wit-

nesses testify that these lands have been reduced in value to about $30 per acre, caused by the fall in prices generally and the lack of demand for farm land.

The witnesses further testified that some reduction in the sale price of this land was caused by the suits brought against the smelter company. In effect, the testimony of appellant's witnesses directly contradicts and tends to controvert the case of appellees that the gas and fumes emanating from appellant's plant, if any, have any injurious effect upon the soil, crops, shrubbery or vegetation on appellees' lands or any tendency to injure said lands and that said lands have been or are injured by said smelter in any manner. It was therefore necessary that the court's rulings upon the admission and rejection of testimony should be free from substantial error.

In this case none of appellees' witnesses testified to any knowledge of the powers, properties or nature of the gases, fumes or smoke that they saw emitted from appellant's plant. The witnesses described a smoke and a yellow smoke at times emitting from the stacks, and some of the witnesses smelled a gas and described a condition of dying and injured vegetation upon the lands and a depreciation in the value of the lands from the year 1917 to the date of trial from $75 to nothing. In this state of the proof appellees, over the objection of appellant, were permitted to inquire of the witnesses:

"Q. Can you tell where the smoke or gas comes from that causes that? (This refers to effect on person.)

"A. Yes, sir, it comes from the smelter.

"Q. In your judgment, what has caused the depreciation you have testified about?

"A. The smelter.

"Q. In your judgment what has caused this depreciation in the fair cash market value of the Paisley land?

"A.  Well, it is because of that fumes from the smelter."

Other similar questions were put to appellees' witnesses and answered in a similar manner, to all of which appellant strenuously objected on the ground that the questions called for a pure conclusion of the witness *and sought to make of the witness an expert about matters of which he had no more knowledge than the jury,* and that it was an inquiry as to ultimate facts and invaded the province of the jury.

Appellees, to sustain the competency of this testimony, rely upon a line of cases such as: *Kankakee & S. R. Co. v. Horan,* 131 Ill. 288; *Chicago & P. R. Co. v. Stein,* 75 Ill. 41; *Wenona Zinc Co. v. Dunham,* 56 Ill. App. 351; *Ohio & M. Ry. Co. v. Long,* 52 Ill. App. 670; *Orr v. Ward,* 73 Ill. 318; *Sewell v. Chicago Terminal Transfer R. Co.,* 177 Ill. 93; *Chicago, P. & St. L. Ry. Co. v. Nix,* 137 Ill. 141; *Chicago, P. & St. L. Ry. Co. v. Easton,* 136 Ill. 9; *Illinois Cent. R. Co. v. City of Chicago,* 169 Ill. 329.

In all of the cases cited by appellees, the existence of the subject-matter claimed to have caused the damage, such as the bridge, embankment, waterway, roadway or other subject-matter, was not in dispute, and these cases are not applicable to this case.  There was no question of expert testimony in this case.  The witnesses who testified to the causes and effect of the smoke, gases and fumes, if there were such, testified to no knowledge, scientific or otherwise, upon the subject.  All men have some knowledge of the contour of lands, the nature and effect of embankments and the flow of streams, but very few men have any knowledge of the powers and properties of zinc oxide or sulphuric acid gas and are not much enlightened by reading the common literature upon the subject and know little of the nature of the vapors formed by the evaporation of zinc or sulphur mixed with other substances.  Their properties and nature are usually

known only by those who have made a special study
of the subject. Appellees contend that there was no
objection made to the competency of the witnesses
upon these subjects. The court stated into the record
appellant's objection to the various forms of inquiry,
and preserved all objections in behalf of appellant.
Even expert witnesses are not permitted to state the
specific effect of a proven cause, applied to the case
on trial. The witnesses may testify to the facts and
it is for the jury to draw the inference and form the
opinion as to the matter inquired of. *City of Rock-
ford v. Hildebrand,* 61 Ill. 159. Appellees cite
*Wenona Zinc Co. v. Dunham, supra,* but it is not
shown by the opinion whether the witness had any
knowledge of the nature of the gases and fumes about
which he was testifying, and that case seems to be
passed on, upon the theory that the gases were shown
to be poisonous. We do not consider *Wenona Zinc
Co. v. Dunham, supra,* as laying down a different rule
from that adopted in this case. *Leetham v. American
Zinc Co. of America, post,* p. 636.

In the opinion of this court it was usurping the
functions of the jury for the witnesses in this case *to
give their opinion as to the effect of any gases and
fumes upon vegetation,* and to testify that the depre-
ciation in the value of said property was caused by
appellant's smelter. 11 R. C. L. 564; 22 C. J., p. 498,
sec. 596; *Keefe v. Armour & Co.,* 258 Ill. 28; *Schlauder
v. Chicago & S. Traction Co.,* 253 Ill. 154; *Chicago &
A. R. Co. v. Springfield & N. W. R. Co.,* 67 Ill. 142;
*Linn v. Sigsbee,* 67 Ill. 75; *City of Chicago v. McGiven,*
78 Ill. 347; *Illinois Cent. R. v. Smith,* 208 Ill. 608; *Ohio
& M. Ry. Co. v. Webb,* 142 Ill. 404; *Wight Fire Proof-
ing Co. v. Poczekai,* 130 Ill. 139; *Chicago City Ry. Co.
v. Soszynski,* 134 Ill. App. 149; *City of Centralia v.
Ayers,* 133 Ill. App. 290; *City of Chicago v. Rosen-
baum,* 126 Ill. App. 93; *City of Chicago v. France,* 124
Ill. App. 648; *Pagan v. City of Highland,* 152 Ill. App.

607; *National Gas Light & Fuel Co. v. Miethke,* 35 Ill. App. 629; *Illinois Cent. R. Co. v. Blye,* 43 Ill. App. 612.

As stated in Corpus Juris, *supra:* "The danger involved in receiving the opinion of a witness is that the jury may substitute such opinion for their own," and it is further said in the same authority: "And the courts will not require parties to encounter this danger, unless some necessity therefor appears. Accordingly, where all the relevant facts can be introduced in evidence and the jury are competent to draw a reasonable inference therefrom, opinion evidence will not be received."

In *Keefe v. Armour & Co., supra,* a case for personal injuries caused by the bursting of a tank which Keefe was repairing as a boiler maker for Armour & Co., a witness, who was chief inspector of steam boilers and steam heating and cooling plants in Chicago, testified that he had an opinion that the explosion was a gas explosion. The court said (page 33):

"Any one of the jury was as well qualified as he to determine whether the explosion was a gas explosion or not. The question whether the method employed was reasonably safe was an ultimate fact in the case, to be determined by the jury as a conclusion from evidentiary facts. To permit the witness to give his opinion on the ultimate fact was to supplant the jury by a witness, and practically take from the defendant the right to a judgment of the jury as to the proper inferences to be drawn from the facts. Of course, the jury was entitled to the aid of experts in determining the existence or nonexistence of facts not within the common knowledge from which a conclusion would arise whether the method was reasonably safe."

And the court in the *Keefe* case further said:

"But it is the rule of this court that an expert witness must not take the place of the jury and declare his belief as to the ultimate fact. The right of trial

by jury entitles every party to the judgment of the jury as to the ultimate fact upon which liability rests.''

In *City of Chicago v. McGiven, supra,* where architects were permitted to testify over the objection of the defendant and give their opinion that glass such as that which the evidence showed was inserted in the sidewalk, and upon which plaintiff claimed to have slipped and fallen, was unsafe to be used as a part of a walk and was unsafe for such use, on appeal, the court held:

''The general rule is that the opinions of witnesses are inadmissible as evidence; that they are to testify to facts, and the jury are to draw the inferences and form the opinions which are to govern the case. The present case is supposed to come within the exception to the rule that, on questions of science, skill or trade, or others of the like kind, persons of skill, sometimes called *experts,* are permitted to give their opinions in evidence. But this is on the ground of necessity, when the facts in issue are not themselves accessible by evidence, and it is a matter of necessity to call in the experienced or instructed opinion of such witnesses. The opinions of witnesses should not be received as evidence where all the facts on which such opinions are founded can be ascertained and made intelligible to the court or jury.'' (*Clark v. Fisher,* 1 Paige [N. Y.] 174; *City of New York v. Pentz,* 24 Wend. [N. Y.] 668.) And in *Illinois Cent. R. Co. v. Smith, supra,* the court, commenting upon the *McGiven* case, said:

''The question whether the glass was unsafe by reason of the too great smoothness or slipperiness of its surface was not a question of science or skill. The decision of that question required no special knowledge, and it was easily determinable by the jury upon a sufficient description of facts pertaining to the glass, and the use of it in a sidewalk, being given by witnesses. We do not perceive why mere proof of the naked facts could not enable the jury themselves to draw the inference whether the glass was safe or unsafe.''

In *Kimbrough v. Chicago City Ry. Co.*, 272 Ill. 77, the question was asked of a physician:

"Q. What is your opinion as to the connection between this disease and the tumor or growth in the breast?

"A. That the tumor resulted from the bruise,— the injury to the breast. The neurasthenia resulted from the shock of the accident and was kept alive by the breast condition."

The court say: "Whether or not the collision or accident in this case caused traumatic neurasthenia in the defendant in error or caused the tumor in her breast are ultimate facts upon which the jury must make their findings. It is no more proper, legally, for physicians to settle those questions for the jury by their direct answers than it would be for a motorman of another street car company to settle the question of negligence by testifying in broad terms that the plaintiff in error was guilty of negligence because its motorman failed to cut off the power by use of the canopy switch in time to prevent the collision. The rule in such cases is not different where hypothetical questions are put to the expert witnesses. A physician may be asked whether the facts stated in a hypothetical question are sufficient, from a medical or surgical point of view, to cause and bring about a certain condition or malady, or he may be asked whether or not a given condition or malady of a person may or could result from and be caused by the facts stated in the hypothetical question, but he should not be asked whether or not such facts did cause and bring about such condition or malady." (*Illinois Cent. R. Co. v. Smith*, 208 Ill. 608; *Castanie v. United Rys. Co.*, 249 Mo. 195, 155 S. W. 38; *Sever v. Minneapolis & St. L. R. Co.*, 156 Iowa 664, 137 N. W. 937, 44 L. R. A. (N. S.) 1200; *Keefe v. Armour & Co.*, 258 Ill. 28; *People v. Schultz*, 260 Ill. 35.)

In the case at bar, expert testimony would have been competent to show the effect of any gases or

fumes shown to emanate from appellant's smelter upon trees, land, shrubbery and vegetation generally, *but the witnesses of appellees had no more information upon that subject than the members of the jury,* and for such witnesses to be permitted to state their opinions and inferences to the jury is merely usurping the functions of the jury and as prejudicial to appellant's cause as though the witnesses had asked the jury to find for the plaintiff, and was error in this case.

Appellant contends that the action being for damages as a result of a permanent structure, it was error to admit evidence of injury to property other than appellees. As the judgment in this case is to be set aside and it is not necessary to pass upon this assignment of error upon this hearing, this court suggests that in view of the holdings in *Wylie v. Elwood,* 134 Ill. 281, and *Cooper v. Randall,* 59 Ill. 317, it is not prepared to hold that the testimony as to injuries to other lands, confined strictly to the issue of the ability of the gases and fumes from appellant's plant to do injury, is in all cases incompetent, but such testimony, if competent, should be restricted to injuries caused by such gases and fumes, and all injuries from other causes not shown to arise from appellant's plant should be eliminated.

Appellant contends that the verdict and judgment are excessive and against the weight of the evidence. From a careful reading of the record, it is not made clear what line of testimony the jury followed in making up its verdict, and the amount of the verdict may have been influenced, in some respect, by the incompetent testimony admitted.

For the errors pointed out the judgment and verdict of the lower court will be reversed and the cause remanded to the circuit court of Montgomery county.

*Reversed and remanded.*

On petition for rehearing, opinion modified and rehearing denied.

*Reversed and remanded.*